Lawrence Vernon **EIMERS** and Patricia Lynn Eimers, his wife, Plaintiffs,

v.

**HONDA MOTOR COMPANY, LTD.,** a foreign corporation, **Honda Research and Development Company, Ltd.,** a foreign corporation, and **American Honda Motor Company, Inc.,** a foreign corporation, Defendants.

**Civ. A. No. 90–25 Erie.**

United States District Court, W.D. Pennsylvania.

March 5, 1992.

John Evans, Howard A. Specter, Erie, Pa., Howard A. Specter, Pittsburgh, Pa., for plaintiffs.

Clem Trischler, William Pietragallo, II, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

This case was removed to this court from the Court of Common Pleas of Erie County, Pennsylvania on January 30, 1990. The cause of action arose out of a motorcycle accident which took place on July 16, 1988 along Route 20 in Ripley, New York. Plaintiff Lawrence Eimers alleges that the sidestand on his 1983 Honda CB550SC Night Hawk motorcycle failed to retract upon contact with the road as he was leaning his motorcycle to the left. As a result, the motorcycle flew out of control, hurling Mr. Eimers to the ground. Plaintiffs allege that "Mr. Eimers and the motorcycle slid and tumbled across the road for approximately 148 feet until his forward movement was stopped when he became lodged under a parked car." (Plaintiff's pretrial narrative at page 7).

Lawrence Eimers sustained spinal cord injuries resulting in permanent quadriplegia. Plaintiff Patricia Lynn Eimers is the spouse of Lawrence Eimers and is alleging loss of consortium. Both husband and wife are residents of the State of New York.

Defendants Honda Motor Co., Ltd. and Honda Research and Development Co., Ltd., are both foreign corporations duly organized and existing under the laws of Japan. American Honda Motor Co., Inc. is a California corporation.

Plaintiffs allege that the motorcycle was in a defective condition at the time of its sale or distribution, and that this defect was the proximate cause of the injuries suffered by Mr. Eimers. Plaintiffs aver that each of the defendants is strictly liable. Plaintiffs also allege negligent, reckless, wanton and wilful misconduct in addition to breach of warranties on the part of the defendants.

Presently before this court is a motion for partial summary judgment on the issue of defendant's liability filed by the plaintiffs on November 20, 1991. Subsequently on January 15, 1992 the defendants moved for summary judgment or, alternatively, for partial summary judgment on the issue of failure to warn.

Under Rule 56(c), a party is entitled to summary judgment in his favor "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(e) further provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as oth-

erwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Asserted disputes of fact are "material" if their resolution could affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir.1990).

Inquiry into the genuineness of a factual dispute introduces procedural and evidentiary burdens into a summary judgment action. Mirroring the directed verdict standard of Fed.R.Civ.P. 50(a) in all but procedural posture, the "genuine issue" standard focuses on the sufficiency of evidence and is satisfied if the evidence bearing on the disputed fact is such "that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–212; *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340–41 (3d Cir.1990). The evidence must be more than "merely colorable"; it must be "significantly probative." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *United Transp. v. Conemaugh & Black Lick R.R. Co.*, 894 F.2d 623, 628 (3d Cir.1990). Furthermore, the genuineness inquiry "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252, 254, 106 S.Ct. at 2512, 91 L.Ed.2d at 214 (applying clear and convincing standard in libel action). Credibility determinations, the weighing of evidence, and the drawing of inferences from the underlying facts are, however, jury functions that a judge is not to perform when ruling on a summary judgment motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986); *Kronmuller v. West End Fire Co. No. 3*, 123 F.R.D. 170, 173 (E.D.Pa.1988); *Appli-cations Research v. Naval Air Development Center*, 752 F.Supp. 660, 665 (E.D.Pa.1990).

Regardless of which party would have the burden of persuasion at trial, the initial burden is on the moving party to "show" that there is an absence of evidence to support the nonmoving party's case. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986); *First National Bank of Pa. v. Lincoln National Life Ins. Co.*, 824 F.2d 277, 280 (3d Cir.1987). The moving party need not, however, produce evidence showing the absence of a genuine issue of material fact: that is, he need not "negate" the nonmoving party's claim. *Celotex*, 477 U.S. at 323, 325, 106 S.Ct. at 2553–54, 91 L.Ed.2d at 274–75; *Applications Research, supra* at 665.

Once the moving party carries his burden, Rule 56(e) requires the nonmoving party to "designate" specific facts showing that there is a genuine issue for trial as to each element essential to the nonmoving party's case and on which that party will bear the burden at trial. *Celotex*, 477 U.S. at 322, 324, 106 S.Ct. at 2552–53; *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990). The nonmovant must "do more than simply show that there is some metaphysical doubt" as to such material facts. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Although the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, *Celotex*, 477 U.S. at 324, 106 S.Ct. at 3553, affidavit testimony must set forth only facts that "would be admissible in evidence." Fed.R.Civ.P. 56(e); *see also* Brunet, *Experts in Summary Judgment Motions*, 16 Litigation No. 3 (1990) at 38 ("many cases ... rely on the Federal Rules of Evidence in considering expert affidavits"). Moreover, to be sufficiently specific, facts set forth in affidavits must not be "presumed"; rather, the affiant must state affirmatively that the facts are true. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 3186–87, 3188–89, 111

L.Ed.2d 695, 714, 716–17 (1990); *Applications Research*, 752 F.Supp. at 666.

On cross-motions for summary judgment such as are before the court, the same burdens apply. *Peters Township School Dist. v. Hartford Accident and Indem. Co.*, 833 F.2d 32, 34 (3d Cir.1987); *see also Krupa v. New Castle County*, 732 F.Supp. 497, 505–06 (D.Del.1990) ("the filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party"); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 (1983) at 16–24 (movant concedes the absence of a factual issue and the truth of nonmovant's allegations only for purposes of his own motion and his own legal theories.) *Application Research, Id.* at 666.

The plaintiffs have moved for partial summary judgment on the issue of defendants' liability. Plaintiffs argue that the sidestand on the motorcycle was defective in that it did not retract when it came into contact with the road surface. Plaintiffs aver that such retraction is required under 49 CFR § 571.123 ("Safety Standard No. 123"), promulgated pursuant to the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381, *et seq.* ("the Safety Act"). The purpose of Safety Standard No. 123 is "to minimize accidents caused by operator error in responding to the motoring environment, by standardizing certain motorcycle controls and displays." Section 5.2.4 deals with stands and states, "A stand shall fold rearward and upward if it contacts the ground when the motorcycle is moving forward."

The plaintiffs believe that the "sidestand's failure to retract constitutes a violation of minimal safety requirements established by the Federal Motor Vehicle Safety Standard Act and is negligence per se." (Plaintiffs' motion for partial summary judgment at page 7). Plaintiffs then proceed with an analysis of the negligence per se standard under Pennsylvania law.

■ Defendants were quick to point out, and this court agrees, that it is New York rather than Pennsylvania substantive law that should govern the claims in this case.

When faced with choice of law questions, Pennsylvania courts have abandoned the rule of *lex loci delicti* in favor of a less restrictive approach combining the methodologies of a "government interest analysis" and the "significant relationship" approach of the Restatement (Second) of Conflicts § 145 (1971). *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964). The paramount consideration under this analysis is:

> the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.

*McSwain v. McSwain*, 420 Pa. 86, 94, 215 A.2d 677, 682 (1966)

■ Furthermore, in reviewing the relative interests of each jurisdiction in a cause of action, Pennsylvania courts will weigh their respective contacts qualitatively, rather than quantitatively. *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970); *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 539 A.2d 871, 873 (1988).

■ In the present case, the plaintiffs are residents and citizens of New York, the accident took place in New York, the sale of the motorcycle occurred in New York, and the motorcycle was registered, licensed, and inspected in the state of New York. Under any choice of law analysis, it is the substantive law of New York which will determine the outcome of this case.

■ Under New York law, it has long been held that "Violation of an administrative rule or regulation is never negligence per se, but rather it is merely some evidence of negligence which may be considered by the trier of fact." *Chester Litho, Inc. v. Palisades Interstate Park Commission*, 33 A.D.2d 202, 305 N.Y.S.2d 682, 685 (1969).

■ In addition, "Negligence per se is not liability per se, however, because the protected class member still must establish that the statutory violation was the proximate cause of the occurrence." *Dance v.*

*Town of Southampton,* 95 A.D.2d 442, 467 N.Y.S.2d 203, 206 (1983). Proximate cause is no less an essential element of liability because the negligence charged is premised in part or in whole on a claim that a statute or ordinance has been violated. *Permuy v. City of New York,* 156 A.D.2d 174, 548 N.Y.S.2d 219, 221 (1989). Defendants argue that they did not violate the regulation in dispute, and that even if a violation were found to constitute negligence per se, the proximate cause issue would preclude summary judgment.

■ Using our previously stated burdens in a summary judgment motion, the initial burden is on the plaintiffs to show that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. To do this, plaintiffs allege that "Uncontradicted eyewitness testimony has established that the sidestand did not retract when it came into contact with the highway." Plaintiffs then put forth portions of testimony from Harry Shelman, Everett Smith, Stephen Smith, and William Miller stating that sparks were emitted when the kickstand came into contact with the pavement. In addition, the plaintiff further offers the affidavit of Dror Kopernik, an expert in the field of motorcycle accidents caused by sidestand retraction failures. Mr. Kopernik's testimony is that plaintiff's Honda CB550SC motorcycle was not in compliance with FMVSS 123 and that this non-compliance was the efficient cause of plaintiff's accident.

Defendants counter with what they term "overwhelming evidence demonstrating that the sidestand did, in fact, comply with FMVSS No. 123." (Defendants' reply brief at page 3). To back up that assertion, they refer to excerpts from the depositions of Everett M. Smith and Stewart Valentine. The defendants believe that this testimony shows that the sidestand did fold rearward and upward as required by Safety Standard 123. They also produced a Compliance Report generated by Honda Motor Company, Ltd., which the defendants believe confirms that the motorcycle was designed and performed in compliance with the Safety Standard 123. They also include the affidavit of Charles Buse of Safety Engineering Associates, whose testimony is that the function, operation and design of the sidestand complied with FMVSS No. 123.

The court finds itself in the same posture as the earlier case of *Duncan v. Honda,* No. 90–898 (W.D.Pa. April 2, 1991) (order denying plaintiff's motion for partial summary judgment). Plaintiffs in the present case describe *Duncan* as "a motorcycle case factually and legally almost identical to the case at bar." (Plaintiff's motion for partial summary judgment at page 12). The court is in agreement that the facts and legal questions are almost identical in the present case, and the court also believes the outcome, namely a denial of the motion for summary judgment, should also be the same.

*Duncan* involved the same defendants as are before this court, as well as an accident in which the allegations involved the failure of a kickstand to meet Safety Standard No. 123. Like the *Duncan* court, this court believes that the plaintiffs have made a strong offer of proof that the failure of the motorcycle's sidestand to retract was the cause of the decedent's loss of control of the motorcycle. We also believe the earlier *Duncan* analysis applies in that "The burden here shifts to the defendants to show that a genuine issue of material fact does exist as to violation and causation. The defendants must introduce specific evidence upon which a jury could reasonably find that the accident was not caused by a sidestand which was in violation of the standard. Fed.R.Civ.P. 56(e)." *Duncan, supra,* slip op. at 9.

This court also holds to the same reasoning we applied in *Duncan* when we said:

Although close, this court holds that a jury could reasonably find upon the evidence presented that a failure of the sidestand was not the proximate cause of the decedent's injuries. Given the standards for considering evidence in a Rule 56 motion, the defendants have shown that a material fact exists as to the element of violation and therefore as to causation as well. Considering the evi-

dence presented here in the light most favorable to the defendants and giving the defendants the benefit of all reasonable inferences from the evidence presented, it is conceivable that a jury could reasonably find that the sidestand was not the cause of the accident. Plaintiffs motion for summary judgment as to liability is denied. *Duncan v. Honda,* No. 90–898, slip op. at 9 (W.D.Pa. April 2, 1991).

Defendant has offered the deposition testimony of Stewart Valentine, who was asked, "When you saw the sidestand when it was laying on its side, was it in its up position as it would be when you were operating the motorcycle, or was it down in a resting position?" He replied, "It was up against the frame like it should have been, like you was driving." (Exhibit B of defendants' reply to plaintiffs' motion for summary judgment.) Looking at this evidence in the light most favorable to the defendants, and giving them the benefit of all reasonable inferences, it is possible that if the testimony of Mr. Valentine were found credible, then a factfinder could conclude that the sidestand either had retracted properly upon contact with the pavement, or had been in retracted position from the start. Under either scenario, a jury here as in *Duncan* could reasonably find that a failure of the sidestand to retract was not the proximate cause of the accident.

Defendants also contend that the accident was directly and proximately caused by plaintiff's intoxicated state, and his inability to properly control and operate his motorcycle. Defendants believe that this evidence creates an issue of fact as to whether plaintiff's inability to control the motorcycle was the result of his inebriated condition. For support for this assertion, defendants have introduced emergency room records from plaintiff's admission to Westfield Hospital. Those records are dated July 16, 1988, the date of the accident, and note that "(Plaintiff) states he drank 5 or 6 beers today." (Defendants' reply brief at exhibit E). Defendants also point to hospital records wherein the plaintiff "states he had a few beers today." (Defendant's reply brief at exhibit F).

Plaintiffs believe that these records would not be admissible at trial, and thus should not be considered by the court in its motion for summary judgment. Plaintiffs argue that when recklessness or carelessness is at issue, proof of intoxification is relevant, but the mere fact of consuming alcohol is not admissible, being unduly prejudicial, unless it reasonably establishes intoxification. Plaintiffs refer to a number of Pennsylvania state court cases to support this proposition.

The court cannot speculate at this point in time whether these records would be admissible at trial. In fact, the Federal Rules of Evidence seem to provide a number of ways in which they would be admitted at trial, assuming a proper foundation had been established for their admission. First, the records may pass muster under F.R.E. 401, meaning that they may make the fact of whether the sidestand was the sole cause of the accident "more probable or less probable than it would be without the evidence." Secondly, the records could conceivably become part of the evidence under F.R.E. 803(4), as an exception to the hearsay rule. This exception permits statements to avoid hearsay objections if they were made for purposes of medical diagnosis or treatment.

While the consumption of alcohol by the plaintiff on the day of the accident is in no way conclusive in this case, it is one additional element that the defendants have advanced to show that a genuine issue of material fact exists as to causation, and thus as to whether the elements of negligence per se have been met.

This court is of the opinion that the defendants have met their Fed.R.Civ.P. 56(e) burden. They have "done more than simply show that there is some metaphysical doubt" as to material facts for which they will bear the burden of proof at trial. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, 89 L.Ed.2d at 552. As previously discussed, the court is not certain whether some of the evidence would actually be admitted at trial. However, the nonmoving party need not produce evidence in a form

that would be admissible at trial in order to avoid summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274, 275, *Applications Research,* 752 F.Supp. at 666.

In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubts against the moving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson, supra,* 106 S.Ct. at 2513. The court believes that viewing inferences favorable to the defendants, resolving doubts against the plaintiffs, and taking as true the defendants' version of the conflicting allegations that are before this court, the plaintiffs' motion for partial summary judgment should be denied.

Most importantly, the court believes that credibility determinations, the weighing of the evidence and the drawing of the inferences from the facts are jury functions that a judge is not to perform when ruling on a summary judgment motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Kronmuller v. West End Fire Co. No. 3,* 123 F.R.D. 170, 173 (E.D.Pa.1988).

■ The court will next take up the motion of the defendants for summary judgment. Defendants argue that New York law precludes the recovery of damages where the plaintiff's injuries are caused by his own "serious" violation of the law. To support this assertion, they point to a New York vehicle and traffic law which provides in relevant part:

> No person shall operate a motor vehicle or a trailer on a public highway if such vehicle is equipped with tires that do not meet the standards established by the Commissioner pursuant to paragraph (a) of this subdivision.
> New York Vehicle and Traffic Law § 375.35(c).

As evidence, the defendants would introduce a traffic ticket which an officer of the Chautauqua County Sheriff's Office issued after the accident. Officer Lori Hall issued a citation for a violation of the Vehicle Code for operating a vehicle with an unsafe tire. In deposition testimony, Officer Hall said that she considered the tire unsafe for operation on the roadway. (Exhibit B of defendants' motion for summary judgment).

Plaintiffs disparage the testimony of Officer Hall because she is not qualified as an expert, and admits that she knows nothing about motorcycle tires. They argue that her statements at most raise questions of fact as to the condition of the tire at the time of the accident, and do not establish that the tire was in violation of New York law and a causal agent in the accident.

The court's reaction to both sides on the issue of Officer Hall's testimony is similar to its earlier reasoning on the plaintiffs' motion for partial summary judgment. The court would once again inquire whether Officer Hall's description of the tire and her decision on whether or not to issue a citation do not fall within the ambit of "credibility determinations, the weighing of evidence, and the drawing of inferences from underlying facts (which) are, however, jury functions that a judge is not to perform when ruling on a motion for summary judgment." *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. In other words, the court feels that a jury of Mr. Eimers' peers should hear Officer Hall's testimony, assuming that it surmounts any evidentiary barriers to admissibility, and then permit them to decide the deference to which the evidence should be accorded.

In a similar light, the defense argues that substantial weight be given to the testimony of an eyewitness to the accident, Harry Shelman, who said, "the rear wheel lost traction." Plaintiffs, on the other hand, refer to this testimony as a "manipulation of the facts," and argue that Mr. Shelman instead establishes that "the motorcycle went out of control as a result of the sidestand's failure to retract." (Plain-

tiffs' response brief at page 4). It is just this sort of extrapolation of a portion of lengthy deposition testimony to suit either side's needs that makes this case such a poor candidate for summary disposition. The court feels the cause of justice would best be served by hearing the testimony from the witness stand of Harry Shelman *in toto,* and then permitting the factfinding jury to draw the inferences they deem appropriate from his testimony.

The Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact and for dealing with the risk of error through the adversarial process. *Barefoot v. Estelle,* 463 U.S. 880, 899 & 901 n. 7, 103 S.Ct. 3383, 3397 & 3398 n. 7, 77 L.Ed.2d 1090 (1983); *DeLuca v. Merrell Dow Pharmaceuticals, Inc.,* 911 F.2d 941 (3d Cir.1990). If the evidence is relevant, and not clearly wrong, it goes to jurors, who then "have the benefit of cross-examination and contrary evidence by the opposing party." *Barefoot,* 463 U.S. at 898, 103 S.Ct. at 3397. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations. *In re Japanese Electronic Products,* 723 F.2d 238, 279 (D.Pa.1983) (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[03], at 702–14–15 (1982); *Linkstrom v. Golden T. Farms,* 883 F.2d 269, 270 (3d Cir.1989).

In a similar manner, both sides argue the merits of the deposition testimony of Augustine Villella, who apparently had operated the Eimers' motorcycle several hours prior to the plaintiff's accident, and who testified that "I hit the brake, and I hit it too hard. And the back tire skidded out on the gravel and mud. It was slick." (Exhibit D of defendants motion for summary judgment). Defendants argue that "The Villella episode confirms that the tire was in an unsafe condition owing to its excessive wear which resulted in a loss of handling, control and stability and directly contributed to this accident." (Defendants' brief in support of motion for summary judgment at page 7). Plaintiffs counter that "The fact that one accident has occurred on account of a certain reason has

no persuasive value that a second accident may have occurred for the same reason ..." (Plaintiffs' response brief at page 5). The court would add its own observation that in that small fragment of Mr. Villella's testimony, he admits that he hit the brake too hard, and that the road was slick. Both these factors would preclude the automatic assumption that the tire was in an unsafe condition due to excessive wear, and that the tire directly contributed to the accident. In fact, hitting the brake too hard and the road being slick could be independent factors to the motorcycle falling on its side for Mr. Villella. There are simply too many vagaries to the testimony of a witness such as Mr. Villella for the court to pass judgment in a summary and incomplete fashion.

The learned attorneys for both sides are cognizant that Federal Rule of Evidence 401 defines relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Simply stated, the jury should hear the testimony of Mr. Villella regarding the events which took place earlier on the day of the accident, and determine what weight they as factfinders should accord to that testimony.

■ Defendants also argue that the warnings provided to the plaintiff were adequate, and that Mr. Eimers failed to read the owner's manual, and thus the failure to warn could not be the proximate cause of the accident. Under New York law, the generally accepted rule ... is that the reasonableness *vel non* of a set of warnings is a question of fact for the jury. *Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 A.D.2d 55, 63–65, 427 N.Y.S.2d 1009, 1014–15 (1980).

■ Proximate cause is a necessary predicate to finding liability, and in duty to warn cases, New York recognizes two circumstances that would preclude a finding of proximate cause; obviousness and the knowledgeable user. Proximate cause cannot be found when the dangers are obvious

or well-known. *Lancaster Silo, supra, Andrulonis v. U.S.*, 924 F.2d 1210, 1222 (2d Cir.1991).

█ If a danger is obvious, there is no duty to warn against it. *Kerr v. Koemm*, 557 F.Supp. 283, 287 (S.D.N.Y.1983). The Restatement (Second) of Torts § 388 and comment (k) state that a duty to inform users of a danger exists if the supplier of a product has no reason to expect that the user will discover its condition and realize the danger involved. This inquiry into the obviousness of the danger depends not on actual knowledge of the user, but upon whether the danger was sufficiently obvious that it would be unreasonable to impose a duty to warn on the manufacturer. *Kerr*, 557 F.Supp. at 287. Thus, the focus of the "obviousness" inquiry is upon the objective reasonableness of the supplier's judgment about whether users will perceive the danger. *Id.* The danger must be so apparent or so clearly within common knowledge that a user would appreciate the danger to the same extent that a warning would provide. *Andrulonis*, 924 F.2d 1210, 1222.

█ The court cannot say that the danger of the sidestand failing to retract in the present case is so apparent or so clearly within common knowledge that a user would appreciate the danger to the same extent that a warning would provide. The "obviousness" inquiry does not permit the court to discern the reasonableness of the supplier's judgment about whether users will perceive the danger.

█ The second circumstance New York recognizes that would preclude a finding of proximate cause is the "knowledgeable user exception." Its rationale is that knowledge is equivalent to prior notice. *Billiar v. Minnesota Mining & Mfg. Co.*, 623 F.2d 240, 243 (2d Cir.1980). Where the plaintiff knows of a danger, a warning cannot increase his awareness of its presence, *Kerr*, 557 F.Supp. at 286, and where a warning would not have prevented the harm, a failure to warn cannot be the proximate cause of the injury. *Billiar*, 623 F.2d at 243, *Andrulonis*, 924 F.2d at 1223.

█ The record before the court does not distinctly demonstrate that the plaintiff would fall within the knowledgeable user exception. It is unclear at this point the degree of knowledge possessed by the plaintiff, or whether a warning would have increased his awareness of the presence of the danger. Nor can the court be confident that a warning to the plaintiff would not have prevented the harm. The plaintiff's degree of awareness of the perils presented by the possibility of the sidestand contacting the road and failing to retract is at still at issue, and the current evidence is not so strong as to fall within the two circumstances which preclude a finding of proximate cause under New York law. As a result, the defendants cannot prevail on their summary judgment motion with regard to the failure to warn.

Both sides in their motions for summary judgment have presented thorough and voluminous accounts of the merits of their positions in this complex case. The parties have asked the court to consider copious amounts of evidence from depositions, expert reports, and other sources. While much of it is credible and persuasive, the court continuously found itself returning to the Supreme Court's admonition that "Credibility determinations, the weighing of evidence, and the drawing of inferences are, however, jury functions that a judge is not to perform when ruling on a summary judgment motion." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Perhaps it is just because both sides have presented their arguments so eloquently and forcefully that summary judgment is precluded in this instance. The proper tribunal to decide such factual issues is the jury, and not the court on summary judgment. "Every new tribunal erected for the decision of facts, without the intervention of a jury ... is a step toward establishing aristocracy, the most oppressive of absolute governments." Sir William Blackstone, *Commentaries on the Laws of England*, 1765–1769. Or in the words of Robert Frost, "A jury consists of twelve persons chosen to decide who has the better lawyer." Viewed in either manner, the

**1214**

court is confident that competent counsel presenting their case to an impartial jury is the most efficacious way of securing justice in this case.

An appropriate order will follow.

### ORDER OF COURT

IT IS HEREBY ORDERED that the motion for partial summary judgment filed by the plaintiffs, Lawrence Vernon Eimers, and Patricia Lynn Eimers, his wife, is DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment, or, alternatively, motion for partial summary judgment, filed by the defendants, Honda Motor Company, Ltd., a foreign corporation; Honda Research and Development Company, Ltd., a foreign corporation; and American Honda Motor Company, Inc., a foreign corporation, is DENIED.