Frederick W. GUNDLACH, Plaintiff,

v.

Robert J. REINSTEIN, et al., Defendants.

No. 95–CV–6844.

United States District Court,
E.D. Pennsylvania.

April 11, 1996.

Frederick W. Gundlach, Somerville, NJ, pro se.

Carl Hittinger, Celia E. Henry, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for Defendants.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

### I. *BACKGROUND*

■ The *pro se* plaintiff in this diversity case is Frederick W. Gundlach, a New Jersey citizen and 1993 graduate of the Temple Uni-versity School of Law, a publicly funded in-stitution located in Philadelphia (the "law school"). On November 2, 1995, Mr. Gund-lach filed this action against Temple Univer-sity; the law school; Robert J. Reinstein, the dean of the law school and a vice president of Temple University; and Adelaide Ferguson, an assistant dean at the law school (collec-tively, "Defendants"), alleging that Defen-dants are liable to him under the theories of breach of contract and interference with con-tractual relations. Defendants filed a sum-mary judgment motion based solely on the pleadings on January 3, 1996,[1] and argue that (1) the complaint does not sufficiently set forth a cause of action for breach of contract; and (2) the interference with contractual re-lations claim is time-barred.

After a furious exchange of briefings and counter-briefings on the summary judgment issue, Defendants filed their answer on Janu-ary 31, 1996. Defendants attached as exhib-its to the answer two of Mr. Gundlach's communications with Defendants concerning matters relevant to this suit. Mr. Gundlach contends that Defendants violated the law by releasing these letters to the Court. Fur-ther, he contends that Defendants violated his civil rights by refusing to turn over rele-vant medical records. Accordingly, Mr. Gundlach submitted a pleading entitled "Joinder of Claims pursuant to Rule 18," by which he seeks to add four new claims to his complaint. Defendants responded with a motion to strike the "joinder" pleading. Thus, this Memorandum and Order resolves Defendants' summary judgment motion and their motion to strike, as well as Mr. Gund-lach's "joinder" pleading.[2]

■ The thrust of the complaint is that in January and February of 1993, during Mr. Gundlach's final semester of study at the law school, Defendants arbitrarily forced him to withdraw from all but one of his classes and

1. Since "a summary judgment motion filed solely on the basis of pleadings is the functional equiva-lent of a dismissal motion," the Court will deter-mine whether Mr. Gundlach has pleaded a claim on which relief can be granted. *North Arkansas Medical Ctr. v. Barrett,* 962 F.2d 780, 784 (8th Cir.1992).

2. Though he styles his pleading as a "joinder of claims," it is clear from the context that Mr. Gundlach seeks to amend his complaint by add-ing the four new claims. Accordingly, we will treat Mr. Gundlach's pleading as a motion to amend under Rule 15(a) and refer to it as such, and treat Defendants' motion to strike the plead-ing as an opposition to the motion to amend.

allowed him to visit the law school campus only to the extent necessary for him to attend the one class and sit for the final examination.[3] Thus, Mr. Gundlach was denied access to law school facilities such as the library and the career placement office. In this way, according to the complaint, Defendants breached the contract they had allegedly entered with Mr. Gundlach when he paid his tuition and matriculated. Moreover, Mr. Gundlach asserts that Defendants interfered with his attempts to secure employment by denying him meaningful access to the career placement office and by waiting until November of 1993 before certifying him for admission to the bar.[4]

## II. *DEFENDANTS' SUMMARY JUDGMENT MOTION*

### A. *The Contract Claim*

■ Defendants have challenged the legal sufficiency of the complaint. Thus, we must examine whether the plaintiff has set forth facts which state a claim as a matter of law. *Taha v. INS*, 828 F.Supp. 362, 364 (E.D.Pa. 1993). The court must accept as true all of the factual averments in the complaint and extend to the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). Thus, a complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

■ Mr. Gundlach asserts that he is entitled to relief as a result of Defendants' alleged breach of contract. In order to plead a proper claim for breach of contract under Pennsylvania law, a plaintiff must allege: (1) the existence of a valid and binding contract to which he and the defendants were parties;[5] (2) the contract's essential terms; (3) that he complied with the contract's terms; (4) that the defendants breached a duty imposed by the contract; and (5) damages resulting from the breach. *Cottman Transmission Sys., Inc. v. Melody*, 851 F.Supp. 660, 672 (E.D.Pa.1994) (citing *Electron Energy Corp. v. Short*, 408 Pa.Super. 563, 597 A.2d 175 (1991), *aff'd without op.*, 533 Pa. 66, 618 A.2d 395 (1992)).

■ Mr. Gundlach concedes that no written contract between the parties exists. Instead, he argues that under Pennsylvania law, a binding contract between student and university automatically arises upon matriculation, pursuant to which the student is "entitled to the full benefits and privileges" associated with enrollment. Compl. ¶ 2. A review of the relevant Pennsylvania authority reveals that a student may bring a contract action to enforce the specific promises made by his university. In *Britt v. Chestnut Hill College*, 429 Pa.Super. 263, 632 A.2d 557 (1993), for example, the court reversed the lower court and reinstated the plaintiff's contract claim, holding that "an institution may make a contractual obligation to a student which it is not free to later ignore." *Britt* 632 A.2d at 560.

Moreover, in *Cavaliere v. Duff's Business Inst.*, 413 Pa.Super. 357, 605 A.2d 397 (1992), the court recognized that a breach of contract action could lie against an institution in the event of a breach of a specific contractual undertaking. Thus, if a

> "school were to accept a student's tuition and thereafter provide no educational ser-

---

3. Mr. Gundlach apparently graduated from law school in the spring of 1993 and has since been admitted to the bars of two states.

4. The allegation that Defendants wrongfully refused to certify Mr. Gundlach for admission to the bar until November, 1993 appears for the first time in the legal memoranda regarding these motions; it is not contained in the complaint. Accordingly, it cannot be considered in the instant context. *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) (court may consid-

er only allegations in the complaint and other evidence of record in weighing Rule 12(b)(6) motion), *cert. denied*, —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

5. *See Electron Energy Corp. v. Short*, 408 Pa.Super. 563, 597 A.2d 175, 177 (1991), *aff'd without op.*, 533 Pa. 66, 618 A.2d 395 (1992) ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract.").

vices, an action for breach of contract might lie. Similarly, if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract with appropriate consequential damages might be viable."

*Id.* at 401 (quoting *Paladino v. Adelphi Univ.,* 89 A.D.2d 85, 454 N.Y.S.2d 868, 873 (1982)). Courts in other jurisdictions have reached similar results. *See Ross v. Creighton Univ.,* 957 F.2d 410, 417 (7th Cir.1992) (plaintiff must "point to an identifiable contractual promise that the defendant failed to honor" in order to sustain his contract claim); *Wickstrom v. North Idaho College,* 111 Idaho 450, 725 P.2d 155, 157 (1986) (contract action could lie if specific terms of implied contract are left unmet); *Behrend v. Ohio,* 55 Ohio App.2d 135, 379 N.E.2d 617, 620 (1977) (implied contract between student and state university arises when student pays tuition and enrolls).

■ With this background in mind, we turn now to Mr. Gundlach's complaint to determine whether he has properly set forth his contract claim. Upon review, we conclude that the complaint fails to state a claim for relief under contract theory because it fails to identify the specific manner in which Defendants allegedly breached the contract. As we noted above, Mr. Gundlach alleges generally that he was not provided with the full benefits and privileges of enrollment, but he fails to identify the specific benefits he was allegedly promised, the means by which he was promised them, and the manner in which Defendants allegedly reneged on those

promises. *See Ross,* 957 F.2d at 416 (noting that the bulletins, circulars and regulations made available to the student become part of the contract). Accordingly, we conclude that Mr. Gundlach has failed to state a claim on which relief can be granted. In the interests of justice, we will dismiss the contract claim without prejudice, and allow Mr. Gundlach fourteen days in which to submit an amended complaint, if he should choose to do so.

### B. The Tort Claim

■ Mr. Gundlach also alleges that Defendants are liable to him under the theory of tortious interference with contract and prospective economic relations. The alleged basis for this claim is Defendants' refusal to provide Mr. Gundlach with meaningful access to the career services office at the law school. Since the events complained of occurred in January and February of 1993, however, this claim is barred by the statute of limitations set forth in 42 Pa.Cons.Stat.Ann. § 5524(3), which provides that any "action for taking, detaining or injuring personal property, including actions for specific recovery thereof," must be commenced within two years. *See Torchia v. Keystone Foods Corp.,* 431 Pa.Super. 83, 635 A.2d 1082, 1086 (1993) (interference with contract rights action must be commenced within two years), *appeal denied,* 537 Pa. 666, 644 A.2d 1203 (1994); *Bender v. McIlhatten,* 360 Pa.Super. 168, 520 A.2d 37, 38–39 (same), *appeal denied,* 515 Pa. 571, 527 A.2d 533 (1987). Accordingly, Mr. Gundlach's complaint must be dismissed as to the second count.[6]

---

6. To the extent Mr. Gundlach contends that New Jersey law applies to this claim, such argument must be rejected. A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 399 (3d Cir.1987). Pennsylvania courts apply a flexible approach that combines the "government interest analysis" with the "significant relationship" test. Thus, courts are to consider which state has a priority of interest in the application of its rule of law, the place of contracting, the place of the alleged harm, and the domicile of the parties. *Eimers v. Honda Motor Co., Ltd.,* 785 F.Supp. 1204, 1208 (W.D.Pa.

1992); *Giovanetti v. Johns–Manville Corp.,* 372 Pa.Super. 431, 539 A.2d 871, 873 (1988). When the facts set forth in the complaint are examined in light of the standard articulated above, the clear result is that Pennsylvania law applies.

Further, to the extent that the allegations in the complaint could be construed to state a claim either for defamation or for a federal civil rights violation, such claims must be rejected as time-barred. *See* 42 Pa.Cons.Stat.Ann. § 5523 (Supp. 1995) (action for libel or slander must be commenced within one year); *Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 78 (3d Cir.1989) (federal civil rights action in Pennsylvania must be commenced within two years).

## III. MR. GUNDLACH'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Mr. Gundlach argues that the inclusion in their answer of the two letters he sent to Defendants and Defendants' refusal to grant him access to his medical records give rise to four new causes of action. These include two claims under 42 U.S.C. § 1983, based on Defendants' alleged noncompliance with the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (1990 & Supp. 1995) ("FERPA");[7] a claim for breach of contract; and a claim for tortious interference with contractual relations. As noted above, we construe Mr. Gundlach's "joinder" pleading as a motion for leave to amend the complaint under Fed.R.Civ.P. 15(a), and analyze it accordingly.

The decision to grant or deny a motion for leave to amend a complaint rests within the trial court's discretion. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486 (3d Cir.1990); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984). Pursuant to Rule 15(a), the general rule is that "leave shall be freely given when justice so requires." Thus, Rule 15(a) "embodies a liberal approach to amendment." *Dole*, 921 F.2d at 486–87; *see Long v. Lipkins*, 96 F.R.D. 234, 234 (E.D.Pa.1983) (noting that a court's Rule 15(a) discretion "should be generally exercised in favor of amendment"). As our Court of Appeals has noted, however, the policy favoring liberal amendment of the complaint is not unbounded. *Dole*, 921 F.2d at 487. Indeed, the court may deny a Rule 15(a) motion if the amendment would be futile, that is, if the additional claims would not withstand a motion to dismiss. *Glaziers and Glass Workers Union Local No. 252*

*Annuity Fund v. Janney Montgomery Scott, Inc.*, 155 F.R.D. 97, 100 (E.D.Pa.1994) (citations omitted). We will examine Mr. Gundlach's motion in light of the standard articulated above.

### A. The FERPA–Based Civil Rights Claim

In proposed Count Three, Mr. Gundlach asserts that by attaching to their answer the two letters at issue, Defendants infringed upon federally-protected civil rights articulated under FERPA. FERPA's purpose is to ensure access to records relating to education for students and parents while protecting the privacy of such records from general disclosure. *Student Press Law Center v. Alexander*, 778 F.Supp. 1227, 1228 (D.D.C. 1991). FERPA was enacted pursuant to the Congress' spending power;[8] thus, it conditions federal education funding on the institution's ability to maintain the privacy of education records, as follows:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records ... of students without the written consent of their parents to an individual, agency, or organization, other than to [exceptions not applicable here].

20 U.S.C. § 1232g(b)(1) (1990 & Supp.1995).

We therefore consider, under the facts presented in the proposed amended complaint, whether Mr. Gundlach can bring an action pursuant to 42 U.S.C. § 1983 to redress Defendants' alleged noncompliance with FERPA. Section 1983 provides, in relevant part, as follows:

---

**7.** It appears that Mr. Gundlach has abandoned his FERPA-based claim arising from Defendants' alleged failure to provide him access to his medical records. Plaintiff's Feb. 28, 1996 memo. at 19. At any rate, the records at issue are not education records and therefore not within FERPA's purview. FERPA explicitly exempts "records on a student who is eighteen years of age ... which are made or maintained" by a medical professional and are "made, maintained, or used only in connection with the provision of treatment to the student." 20 U.S.C. § 1232g(a)(4)(B)(iv). Finally, since Mr. Gundlach has failed to allege that Defendants main-

tain a policy of denying students access to records, but instead bases his claim on one instance of alleged noncompliance, we would conclude that the Congress has not unambiguously expressed the "right" he seeks to enforce. *See, infra,* our discussion at section III, A. Accordingly, the motion to amend will be denied as to proposed Count Six.

**8.** "The Congress shall have Power To ... provide for the ... general Welfare of the United States." U.S. Const. Art. I, § 8.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (1994). In order to state a valid § 1983 claim, therefore, a plaintiff must allege that he was deprived of a right, privilege or immunity guaranteed to him under the Constitution or a federal statute by a defendant acting under color of state law.[9] *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 868 F.Supp. 757, 763 (E.D.Pa. 1994). The focus is not initially on whether a defendant violated some federal statute, but whether the statute at issue vests the plaintiff with some enforceable right, privilege or immunity. *Suter v. Artist M.*, 503 U.S. 347, 357, 112 S.Ct. 1360, 1367, 118 L.Ed.2d 1 (1992) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990)); *see Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979) ("the fact that a federal statute has been violated and some person harmed does not [always] give rise to a private cause of action").

■ Thus, when a plaintiff seeks to invoke § 1983 to enforce a statute enacted pursuant to the spending power, the relevant inquiry is whether the Congress unambiguously conferred upon the beneficiaries of the statute a right to enforce its requirements. *Suter*, 503 U.S. at 357, 112 S.Ct. at 1367. The First Circuit Court of Appeals has interpreted *Suter* to require that courts first determine whether the Congress intended to impose mandatory obligations on participating institutions, *Albiston v. Maine Comm'r of Human Services*, 7 F.3d 258, 263 (1st Cir. 1993), an inquiry that necessarily entails an examination of "exactly what is required" of the participating institutions by the statute. *Suter*, 503 U.S. at 357, 112 S.Ct. at 1367. Moreover, *Suter*, requires an "unambiguous" expression of the obligations of the institution, so that participating institutions are able to exercise their options " 'knowingly, cognizant of the consequences of their participation.' " *Albiston*, 7 F.3d at 263 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981)).

Our Court of Appeals has yet to confront a post-*Suter* § 1983 action in which the plaintiff seeks to enforce the requirements of a spending power-based statute. This Court, however, has twice examined the issue in *Suter*'s aftermath. In *Baby Neal v. Casey*, 821 F.Supp. 320 (E.D.Pa.1993), this Court was asked to determine whether the plaintiffs could enforce specific provisions of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–28, 670–79. Relying on *Suter*'s mandate that the statute at issue be read strictly with an eye toward gleaning its precise requirements, this Court determined that the "rights" the plaintiffs sought to enforce were not unambiguously expressed in the statute. *Baby Neal*, 821 F.Supp. at 326–27. Thus, the court denied the plaintiffs' bid to enforce the provisions of the Adoption Act by way of a § 1983 suit.

■ Moreover, in *Beth V. v. Carroll*, 876 F.Supp. 1415 (E.D.Pa.1995), this Court concluded in *dicta* that "after *Suter* the standard for advancing a private remedy under section 1983 is no more lenient than the traditional *Cort*-based standard for direct implication" of a private right of action.[10] *Id.* at 1435. This

---

**9.** The parties seem to agree that Defendants here are state actors.

**10.** In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth the test used to determine whether a plaintiff may bring a private right of action directly under a statute that does not explicitly provide for one. Thus, a court must question whether (1) plaintiff is part of the class for whose especial benefit the statute was enacted; (2) there is any indication of a Congressional intent to create or deny a private right of action; (3) implication of a private right of action is consistent with the statute's purposes and goals; and (4) the matter is one traditionally relegated to the states. *Id.* at 78, 95 S.Ct. at 2087. Of these, the factor concerning legislative intent is accorded the greatest weight. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). Applying this test, another district court in this

Court further noted that while the Third Circuit has yet to address the issue, "it too appears inclined toward an appreciation of *Suter*'s broader ramifications." *Id.* at 1436 (citing *United States v. Accounts Nos. 3034504504 & 144-07143*, 971 F.2d 974, 982 (3d Cir.1992), wherein the court noted, in *Suter*'s aftermath, that the Supreme Court now appears "especially reluctant to imply provisions that are ordinarily expressly stated into statutes that do not mention them").

■ In view of *Suter*, we conclude that Mr. Gundlach cannot seek redress pursuant to a FERPA-based § 1983 claim under the facts alleged in support of the proposed claim. As we recognized above, *Suter* requires an examination of the statute to determine "exactly what is required" by the participating institutions. *Suter*, 503 U.S. at 357, 112 S.Ct. at 1367. A careful reading of § 1232g(b) reveals a Congressional intention to impose a mandatory obligation on participating institutions, such that it may not have in place "a policy or practice of permitting the release of education records." § 1232g(b). Thus, the requirement placed on the participating institution is not that it must prevent the unauthorized release of education records, as Mr. Gundlach contends, but that it cannot improperly release such records as a matter of policy or practice. The court in *Smith v. Duquesne Univ.*, 612 F.Supp. 72 (W.D.Pa.1985), *aff'd without op.*, 787 F.2d 583 (1986), recognized as much when it concluded that "FERPA was adopted to address *systematic, not individual,* violations of students' privacy and confidentiality rights through unauthorized releases of sensitive educational records." *Id.* at 80 (emphasis added). Thus, we glean no unambiguous intention on the part of the Congress to permit the invocation § 1983 to redress an individual release of records allegedly covered by FERPA. Accordingly, since § 1232g(b) requires only that the participating institution not have a policy or practice in place that permits the unauthorized release of educational records, Mr. Gundlach's proposed claim, predicated on the discrete submission of two letters to this Court for the

purpose of defending the instant lawsuit, cannot survive a motion to dismiss.

Mr. Gundlach calls our attention to two cases in which the courts applied *Suter* and permitted a FERPA-based § 1983 claim to go forward. *Maynard v. Greater Hoyt Sch. Dist. No. 61-4*, 876 F.Supp. 1104 (D.S.D. 1995); *Belanger v. Nashua Sch. Dist.*, 856 F.Supp. 40 (D.N.H.1994). Of course, neither opinion binds this Court. Even so, neither opinion compels a conclusion different from the one reached above. In *Maynard*, the court held that while FERPA articulates rights enforceable under § 1983, the plaintiffs' particular claims fail because the release of educational records is actionable under FERPA only if "it is done under an official policy or custom." *Maynard*, 876 F.Supp. at 1108. Mr. Gundlach's claim here suffers from the same malady: he has failed to allege that Defendants released the alleged educational records pursuant to university policy. The *Belanger* case is likewise of little help to Mr. Gundlach, since it was concerned with § 1232g(a)(1)(A), the FERPA provision addressing the student and parent's review of educational records, and not the provision under which Mr. Gundlach seeks to proceed.

Finally, by holding that FERPA sets forth rights enforceable under § 1983, the *Maynard* and *Belanger* courts have both taken a position that is at odds with what appears to be the prevailing post-*Suter* view in this circuit as expressed in *Accounts Nos.*, *Beth V.* and *Smith:* absent satisfaction of the *Cort v. Ash* test, a plaintiff cannot seek to enforce a federal spending-power based statute by way of a § 1983 action. If the *Beth V.* court's read on the post-*Suter* § 1983 landscape is accurate, the Third Circuit's affirmance of the *Smith* decision would foreclose Mr. Gundlach's claim. In the absence of the Third Circuit's direct consideration of the issue, however, it is enough for this Court to conclude that even under the more permissive interpretations of *Suter* articulated in *Maynard* and *Belanger*, Mr. Gundlach has failed to state a valid FERPA-based § 1983 claim. Accordingly, we must deny his mo-

circuit has concluded that there is no direct private right of action under FERPA. *Smith v.*

*Duquesne Univ.*, 612 F.Supp. 72 (W.D.Pa.1985), *aff'd without op.*, 787 F.2d 583 (3d Cir.1986).

tion for leave to amend his complaint with respect to that claim.

### B. *The Contract-Based Claims*

 Mr. Gundlach contends that the alleged inclusion of the confidential materials in the answer gives rise to a breach of contract claim as well as a claim for interference with contractual relations. With respect to the proposed contract claim, however, we conclude that Mr. Gundlach has failed to set forth sufficient facts from which a factfinder might conclude that Defendants are liable to him under contract theory. In particular, Mr. Gundlach has failed to allege that he and Defendants had a contractual relationship at the time of the alleged breach, as well as the nature and source of the contractual obligations and the manner in which the alleged breach was achieved. *Cottman*, 851 F.Supp. at 672.

Likewise, we conclude that Mr. Gundlach has failed to set forth a viable claim for interference with contractual relations. In order to state a claim under this theory in Pennsylvania, four elements must appear in the complaint: (1) a contractual relation; (2) purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) damage resulting from defendant's conduct. *Atlantic Paper Box Co. v. Whitman's Chocolates*, 844 F.Supp. 1038, 1047 (E.D.Pa.1994). Here, Mr. Gundlach has done nothing more than allege that the inclusion of the letters "amounts to interference with Plaintiff's contractual relations with Temple University and Temple Law School." Thus, Mr. Gundlach's proposed claim fails woefully short of the law's requirements. In particular, Mr. Gundlach has not alleged that he and Defendants were contractually bound at the time of the alleged tort. Accordingly, since neither of Mr. Gundlach's proposed state law claims could survive a motion to dismiss, his motion for leave to amend the complaint must be denied in these respects as well.

### IV. *CONCLUSION*

For the reasons stated above, Defendants' motion for summary judgment will be granted in part. The complaint will be dismissed; and we will grant Mr. Gundlach leave to submit an amended complaint within fourteen days of the date of the attached order. Further, Mr. Gundlach's motion for leave to amend the complaint and Defendants' motion to strike will both be denied. An order follows.

### *ORDER*

AND NOW, this 11th day of April, upon consideration of Defendants' Motion for Summary Judgment, and the Response thereto, it is hereby ORDERED, for the reasons set forth in the preceding Memorandum, that said Motion is GRANTED IN PART as follows:

1. Count I (Breach of Contract) is hereby DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to submit an amended complaint within fourteen (14) days of the date of this Order; and

2. Count II (Interference with Contractual Relations) is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED, upon consideration of Plaintiff's Motion for Leave to File an Amended Complaint and Defendants' Motion to Strike, that said Motions are hereby DENIED.