David **MAYNARD,** Cathy Maynard, and J.M., by and through his next friends, David and Cathy Maynard, Plaintiffs,

v.

**GREATER HOYT SCHOOL DISTRICT NO. 61–4;** Gregory Heeren, Chairman of the Greater Hoyt School Board (individually and in his official capacity); Audrey Ericson, member of the Greater Hoyt School Board (individually and in her official capacity); Lynn Johnson, member of the Greater Hoyt School Board (individually and in his official capacity); Martha Morin, member of the Greater Hoyt School Board (individ-

ually and in her official capacity); Cynthia Hayes, member of the Greater Hoyt School Board (individually and in her official capacity); Marcene Heeren, individually; and Raymond Heeren, individually, Defendants.

No. Civ. 93–4191.

United States District Court,
D. South Dakota,
Southern Division.

Feb. 21, 1995.

Michael J. Butler, Butler and Nesson, P.C., Mark V. Meierhenry, Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, for plaintiffs.

Susan Jansa Brunick, Michael L. Luce, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for defendant School Bd. & Members.

Thomas J. Nicholson, Johnson, Eklund, Nicholson, Dougherty & Abourezk, Sioux Falls, SD, for defendant Marcene Heeren.

Daryl L. Hecht, Crary, Huff, Raby, Inkster, Hecht & Sheehan, Sioux City, IA, for defendant Raymond Heeren.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, Senior District Judge.

The Court took under advisement the defendants' motions to dismiss and motions for summary judgment. For the reasons set forth below, summary judgment will be granted to defendants on the federal claims and the pendent state law claims will be dismissed.

### Background

David and Cathy Maynard have a son, J.M., who is autistic. The Maynards live in Greater Hoyt School District No. 61–4, which is located in South Dakota but adjacent to Akron, Iowa. There is no municipality in the school district, and the residents consider Akron, Iowa as their home community. The school district contracts with Iowa's Akron–Westfield school district for the education of the Greater Hoyt school children. J.M. had received special education at Akron–Westfield until it was determined that he needed special instruction at a residential school in Connecticut. The Greater Hoyt School District accepted this recommendation and paid for the cost of tuition, room and board for J.M., and travel costs for periodic visits by J.M.'s parents.

The cost of J.M.'s special education out-of-state was documented in the school district's public meeting notices in the local newspaper as required by SDCL § 13–8–35 when expenditures were made. The cost to the school district for J.M.'s special education rose dramatically, and property taxes in the district had to be raised significantly to cover the initial district special education outlays. The taxpayers in the county inquired about the cause of the tax increase. Marcene Heeren, a school district taxpayer and newspaper reporter, contacted a reporter at the *Sioux City Journal,* a regional newspaper, regarding the tax increase.

Subsequent news coverage detailed the cost of the special education in Connecticut, linked the tax increase to those costs, and identified J.M. by name and photograph as the student receiving the out-of-state education. A public hearing on the issue of the tax increase and the potential for reducing

the local tax burden was held. The school board members explained the situation and responded to the concerns of the citizens, but no change was made in J.M.'s out-of-state special education or its payment by the Greater Hoyt School District.

The Maynards later received harassing phone calls and other actions were taken that the Maynards felt were attempts to force them to move out of the school district. Raymond Heeren publicly opposed the out-of-state schooling and was particularly outspoken regarding the costs to the local taxpayers. He is alleged to have made defamatory statements about the Maynards. The complaint in this case seeks damages for the defendants' treatment of the Maynards, setting forth two causes of action under federal statutes and several pendent state law claims.

## Discussion

I. *Complaint Count I: 42 U.S.C. § 1983.*

A. *FERPA Enforceability under § 1983 and Motion to Dismiss.*

 This claim is premised on a violation of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, also known as the Buckley/Pell Amendment to the General Education Provisions Act. There is no private right of action under FERPA. *Girardier v. Webster College,* 563 F.2d 1267 (8th Cir.1977). This claim is instead brought under 42 U.S.C. § 1983 as a violation of the plaintiffs' federal rights. The Eighth Circuit has not addressed the issue of whether a FERPA violation states a claim under 42 U.S.C. § 1983; the only Courts of Appeals that have addressed the issue have allowed such § 1983 claims. *Tarka v. Cunningham,* 917 F.2d 890 (5th Cir.1990); *Fay v. South Colonie Cent. School Dist.,* 802 F.2d 21 (2nd Cir.1986). However, these decisions were issued prior to the latest Supreme Court case on the subject of § 1983 enforceability of federal statutes, *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). It is therefore necessary to address this issue under the Eighth Circuit's post-*Suter* framework for analysis of such claims.

 The Eighth Circuit's analysis of the relevant law indicates that "... a section 1983 action is created where Congress intends the statute to benefit persons like the plaintiffs through the imposition of mandatory and direct obligations on the state, and where no comprehensive enforcement mechanism exists under which plaintiffs may find relief." *Howe v. Ellenbecker,* 8 F.3d 1258, 162 (8th Cir.1993) (citation and footnote omitted). The Maynards are within the class of persons intended to be benefited by FERPA. FERPA does establish mandatory and direct obligations regarding educational records on school districts that receive federal funds. The enforcement scheme set up by FERPA cuts off all federal funds to any educational agency that violates FERPA. It is obvious that the available sanction does not provide a remedy to the plaintiffs for the alleged violation of FERPA, and in fact would serve to exacerbate the community's financial burden in providing the "free, appropriate, public education" required by other federal statutes. "The federal government's authority to audit and impose monetary sanctions does not constitute 'comprehensive' remedies." *Howe,* 8 F.3d at 1263, citing *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). The Department of Education, in a separate administrative procedure, has already determined that the school district violated FERPA, but did not deny federal funds to the district.

FERPA therefore cannot be said to provide a comprehensive enforcement mechanism which would provide the Maynards with the relief they seek, which is monetary damages and prevention of future releases of confidential student educational records information. The complaint does state an enforceable cause of action under 42 U.S.C. § 1983 and the defendants' motions for dismissal must be denied.

B. *Summary Judgment Motions.*

 The private defendants, Marcene Heeren and Raymond Heeren, are not state actors and therefore cannot be liable under § 1983. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73

L.Ed.2d 482 (1982). The individual school board members are entitled to qualified immunity unless they violated a clearly established right of the plaintiffs. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ Release of information regarding the cost of education for J.M. in the school board meeting minutes was done in an effort to comply with SDCL § 13–8–35, which requires publication of the school board minutes within twenty days of a meeting, "... giving a detailed statement of all expenditures of money, with the names of persons to whom payment is made, showing the service rendered or goods furnished,...." No case has ever held that FERPA preempts the South Dakota statutes at issue or similar state laws. The school board consulted its attorney regarding compliance with FERPA and SDCL § 13–8–35, and attempted to follow both statutory schemes. In addition, David and Cathy had previously publicly disclosed the fact that they had an autistic son. David's acknowledgment of this fact in an open letter to the school district voters during a school board election made it common knowledge in the community. An objectively reasonable school board member would not know that the release of information regarding the cause of the increase in property taxes was a violation of the plaintiffs' clearly established right to confidentiality. *Cf. Jackson v. Rapps,* 947 F.2d 332 (8th Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992) (violation of unambiguous federal statute and implementing regulations). The school board members are entitled to qualified immunity in their personal capacities.

■ Qualified immunity for the defendants in their individual capacity does not absolve the school board itself for an alleged § 1983 violation. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Liability upon the school district for the board members' acts is limited to those acts which created or furthered a board policy or custom. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The release of personally identifiable information to third parties without J.M.'s parents' consent is therefore not actionable unless it was done under an official policy or custom of the defendant government body.

The only information released by the school board under any policy, official or otherwise, was the reporting of authorized expenditures in board meeting minutes published according to the requirements of SDCL § 13–8–35.[1] None of the published minutes identify J.M., but they do list David and Cathy Maynard by name for travel expenses received.

■ The decision to publish the minutes in this manner was solely an attempt to accommodate conflicting statutory requirements. The school board cannot be liable for complying with a state law which was not clearly preempted by federal law. The school board was not implementing its own policy or custom, but was enforcing the state's policy of informing constituents of expenditures. The mere fact that local government officials acted pursuant to state law does not give rise to municipal liability. *Pusey v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir.1993), *cert. denied,* ─── U.S. ───, 114 S.Ct. 2742, 129 L.Ed.2d 862 (1994). "It is hard to imagine a municipal policy more innocuous and constitutionally permissible, ... than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality." *Surplus Store & Exchange, Inc. v. City of Delphi,* 928 F.2d 788, 791–92 & n. 4 (7th Cir.1991).

1. A factual dispute exists in regard to whether a school board member released personally identifiable information to a newspaper reporter or another person not authorized under FERPA. For the defendants' summary judgment motions, it is assumed that a board member did give such information to an unauthorized person. However, there is no showing in the record that this was anything other than an isolated incident, not a policy or practice of the school board. *See Thelma D. v. Board of Education,* 934 F.2d 929, 933 (8th Cir.1991) (isolated incidents do not constitute policy or custom).

FERPA establishes federal statutory rights which are enforceable under 42 U.S.C. § 1983, but under the facts of this case the individual defendants are not subject to suit and the undisputed facts indicate that the school board is not liable. The § 1983 claim against the defendants must fail.

## II. Complaint Count II: Conspiracy under 42 U.S.C. § 1985(3).

 The plaintiffs are not members of a class protected by 42 U.S.C. § 1985(3), which prohibits conspiracies to interfere with a protected right, through actions based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, — U.S. —, —— - ——, —, 113 S.Ct. 753, 759–62, 765, 122 L.Ed.2d 34 (1993). Case law has not found the handicapped to be a class for § 1985(3), and families seeking public special education services would likewise not be a class protected by § 1985(3). *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir.1985). Furthermore, the only animus shown in this case is a community-wide disfavor of the cost of out-of-state special education, not the provision of special education services to the members of the purported class. "This is not the stuff out of which a § 1985(3) 'invidiously discriminatory animus' is created." *Bray* at ——, 113 S.Ct. at 762.

## III. Pendent State Law Claims.

The remaining claims of the complaint are pendent state law claims which the Court declines to address. There is no diversity of citizenship for federal court jurisdiction in this case. Having determined that the federal claims are subject to summary judgment for the defendants, the remaining claims will be dismissed under 28 U.S.C. § 1367(c)(3).

Therefore, upon the record herein,

IT IS ORDERED:

(1) That Plaintiffs' Motion to Amend the Complaint, Doc. 52, is granted.

(2) That motions pending at the time of the hearing before the Court on December 12, 1994 at Doc. 29, Doc. 30, Doc. 31, Doc. 32, Doc. 34, Doc. 37 and Doc. 45 are deemed withdrawn by the moving party.

(3) That the Defendants' Motions to Dismiss, Doc. 86 and Doc. 89, are denied.

(4) That the Defendants' Motions for Summary Judgment, Doc. 84 and Doc. 90, are granted as to Counts I and II of the Complaint.

(5) That Defendant Raymond Heeren's Motion for Dismissal or Summary Judgment, Doc. 94, is granted only as to summary judgment on Counts I and II of the Complaint.

(6) That the remaining counts of the Complaint are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

(7) That the Clerk of Courts shall enter a Judgment accordingly.