Rebecca **HOEKSTRA, by and through her parents, John and Sandra HOEKSTRA, Plaintiff,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 283, SAINT LOUIS PARK, MINNESOTA, Defendant.**

Civ. No. 3–95–49.

United States District Court,
D. Minnesota,
Third Division.

Feb. 20, 1996.

Sonja D. Kerr, Kerr Law Office, St. Paul, MN, William A. Welp, Welp Law Office, Inver Grove Heights, MN, for plaintiff.

Susan E. Torgerson, Timothy R. Palmatier, Knutson Flynn Deans & Olsen, St. Paul, MN, for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

## I. INTRODUCTION

This matter is before the Court upon Defendant's Motion for Summary Judgment. For the following reasons, the Court grants Defendant's motion.

## II. BACKGROUND

Plaintiff Rebecca Hoekstra is a resident of Saint Louis Park, Minnesota, and a student of Independent School District No. 283 (the "District"). During the period of time at issue in this lawsuit, Plaintiff attended Cedar Manor Intermediate School. Plaintiff suffers from a physical disability called skeletal achondroplasia, as well as a central auditory dysfunction and learning disabilities. Because of these disabilities, Plaintiff qualified for special education services pursuant to state law.

During the 1991–92 school year, when Plaintiff was in third grade, Plaintiff's parents and the District entered into a settlement agreement to resolve disputes over the educational services that the District was providing to Plaintiff. Despite this settlement, Plaintiff's parents and the District continued to disagree about Plaintiff's educational plan. When three conciliation conferences failed to produce a workable agreement, Plaintiff and her parents requested and received a due process hearing before a state Level I Hearing Officer ("HO") in the spring of 1994. Plaintiff appealed the HO's decision to a Level II Hearing Review Officer ("HRO"); the HRO issued a decision on August 1, 1994. Because neither party appealed the HRO's decision, it became final as provided by state law.

Plaintiff requested a due process hearing in part to determine whether the District had provided her with a free appropriate public education as implemented by an independent educational program ("IEP") for the 1992–93 and 1993–94 school years. Students with disabilities are guaranteed a free appropriate public education by the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. §§ 1400 et seq. The HRO found that Plaintiff's IEPs for those two school years were completely inadequate and that the District had failed to prove that Plaintiff had received a free appropriate public education. *In re Indep. Sch. Dist. No. 283*, 22 IDELR 47, 55 (Minn. Aug. 1, 1994) (hereinafter "HRO Dec."). The HRO held that because the District failed to provide Plaintiff with a free appropriate public education, Plaintiff was entitled to compensatory education of up to three hours a week by a Licensed Special Educator in an after-school program for the 1994–95 academic year, for a total of 108

hours. *Id.* at 55, 56. The HRO's decision also instructed the District to convene a properly constituted educational team at the earliest possible time to review Plaintiff's current IEP and amend it as appropriate. *Id.* at 56. Finally, the HRO required the Minnesota Department of Education ("MDE")[1] to oversee the District's efforts to ensure compliance with federal and state law. *Id.*

The parties dispute what steps the District took to comply with the HRO's decision and when those steps were taken. Plaintiff alleges that the District delayed in convening an IEP meeting and writing an IEP despite repeated requests by Plaintiff's parents and counsel to do so. Plaintiff states that the District was unable to write a legally sufficient IEP and that her counsel asked the MDE on several occasions to enforce the HRO's decision. The District claims that it began searching for a tutor for Plaintiff prior to the start of the school year and began exploring the possibility of using one of its own staff members as a tutor in early September. The District also asserts that Plaintiff's parents were not cooperative in setting up IEP team meetings and reviewing drafts of the IEP.

It is undisputed, however, that the first IEP team meeting took place on September 29, 1994 and that an IEP was first presented to Plaintiff and her parents on October 18. Plaintiff's compensatory tutoring began on November 9. At the end of the school year, Plaintiff had received 87 hours of the 108 hours of tutoring ordered by the HRO. An additional 12.5 hours of tutoring were provided to Plaintiff over the summer. Plaintiff's parents declined the District's offer to provide the remaining 8.5 hours at the beginning of the 1995–96 school year. Count I of Plaintiff's Complaint alleges that the District's delay in providing tutoring to Plaintiff was a deliberate deprivation of her right to receive a free appropriate public education in violation of 42 U.S.C. § 1983.

This lawsuit also involves a dispute over the provision of an elevator key to Plaintiff. Cedar Manor has a wheelchair lift, which has no top, low sides, and an open gate across the front. The District asserts, and the HRO found, that Cedar Manor students were permitted to use the lift, but only with adult supervision. HRO Dec. at 52. Plaintiff knew the procedure for obtaining an elevator lift key from an adult and knew how to use the lift. *Id.*[2] Plaintiff did in fact use the lift at least four or five times during the 1994–95 school year.

The parties dispute when Plaintiff first asked the District for her own elevator key. Plaintiff's physical therapist reported that Plaintiff generally did not need to use the lift until she suffered a foot injury in November 1993, after which the therapist recommended that Plaintiff's use of the stair be supplemented by use of the elevator. Plaintiff asserts that she asked Dr. Johnson, Cedar Manor's principal, for her own elevator key in the fall or early winter of 1993. The District states that Plaintiff asked for a key for the first time at the due process hearing that took place in March and April of 1994.

It is undisputed that during the course of the due process hearing, the District began establishing criteria for independent access to and operation of the lift. The District developed this criteria on or about April 26, 1994, and Plaintiff was provided with her own elevator key on June 3, 1994. Although the issue of independent lift access was essentially moot by the time the case reached the HRO, the HRO found that the initial denial of a personal elevator key to Plaintiff was not a violation of her right to a free appropriate public education. HRO Dec. at 56. Plaintiff alleges in Count II of her Complaint that the District's initial refusal to provide Plaintiff with an elevator key was a deliberate denial of a reasonable accommodation, the use of the elevator, in violation of the Americans with Disabilities Act.

---

1. In 1995, the Minnesota Legislature changed the name of the MDE to the Minnesota Department of Children, Families, and Learning.

2. Plaintiff disputes the HRO's finding that Plaintiff knew the procedure for obtaining an elevator

lift key and knew how to use the lift. While not denying that she knew the procedure, she states that she was never specifically informed of the procedure to obtain a key.

## III. DISCUSSION

 Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992). To determine whether genuine issues of material fact exist, a court conducts a two-part inquiry. The court determines materiality from the substantive law governing the claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts which might affect the outcome of the lawsuit according to applicable substantive law are material. *Id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49, 106 S.Ct. at 2510–11.

### A. Count I: Violation of 42 U.S.C. § 1983

Plaintiff in Count I of her Complaint alleges that the District's "deliberate failure" to provide her with the compensatory tutoring ordered by the HRO violated 42 U.S.C. § 1983 by depriving Plaintiff of her right to receive a free appropriate public education as mandated by the IDEA. In addition to refuting Plaintiff's claim on the merits, the District asserts that Plaintiff's § 1983 claim should be dismissed for failure to exhaust administrative remedies pursuant to the IDEA. *See* 20 U.S.C. §§ 1415(b)(2), (c), & (f).

The Eighth Circuit, following the United States Supreme Court's decision in *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), has held that "a section 1983 action is created where Congress intends the statute [being enforced] to benefit persons like the plaintiffs through the imposition of mandatory and direct obligations on the state, and where no comprehensive enforcement mechanism exists under which plaintiffs may find relief." *Howe v. Ellenbecker,* 8 F.3d 1258, 1262 (8th Cir.1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 1373, 128 L.Ed.2d 49 (1994). The District concedes that a plaintiff may use § 1983 to seek enforcement of an administrative law judge's decision in an IDEA proceeding where neither the federal statute nor the state provides adequate mechanisms to enforce the decision. *See Robinson v. Pinderhughes,* 810 F.2d 1270, 1273–75 (4th Cir.1987); *Reid v. Board of Educ.,* 765 F.Supp. 965, 969 (N.D.Ill.1991). The District does not dispute Plaintiff's assertion that she exhausted the administrative remedies provided by the IDEA, as neither party appealed the HRO's decision to this Court. 20 U.S.C. § 1415(e)(1). The District also concedes that the IDEA does not enable Plaintiff to enforce the HRO's decision. *See Robinson,* 810 F.2d at 1273.

 The District asserts, however, that *Robinson* does not permit a § 1983 action if the state provides for adequate enforcement of the HRO's decision. 810 F.2d at 1273. The Court believes that the District overstates the holding of *Robinson.* Even if the District's position is correct, however, Minnesota's enforcement procedures are insufficient to prevent Plaintiff from pursuing her § 1983 claim. The Minnesota Administrative Code provides that if a school district fails to implement an HRO's decision, a parent can bring this failure to the attention of the Commissioner of the MDE, as Plaintiff's parents did here. Minn.R. 3525.4700. The state's Board of Education may then impose sanctions on the district in the form of a reduction in state aid. Minn.Stat. § 124.15; Minn.R. 3525.4700. The Eighth Circuit has held that a federal enforcement scheme in the form of fiscal sanctions against a state is not a comprehensive statutory remedy sufficient to preclude a § 1983 claim by a private plaintiff. *Howe,* 8 F.3d at 1263 (citing *Wright v. City of Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)); *Maynard v. Greater Hoyt Sch. Dist. No. 61–4,* 876 F.Supp. 1104, 1107 (D.S.D.1995). A similar state enforcement scheme, therefore, cannot preclude Plaintiff from bringing a § 1983 claim.

 To prevail on her § 1983 claim, Plaintiff must (1) show that the District acted under color of state law; (2) establish that Plaintiff was deprived of a right granted

under the United States Constitution or a federal statute; and (3) demonstrate a direct causal link between the District's actions and the deprivation of a federal right. 42 U.S.C. § 1983; *see also City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816–17, 105 S.Ct. 2427, 2432–33, 85 L.Ed.2d 791 (1985). To establish that the District acted under color of law, and therefore can be found liable under § 1983, Plaintiff must show that the District was following a municipal policy or custom when it delayed in providing the tutoring services ordered by the HRO. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Plaintiff may show a municipal policy or custom by proving the existence of an officially adopted policy or decision to deprive individuals of their federal rights, the existence of an unofficial but widespread governmental policy or custom that results in such deprivations, or official inaction by the District reflecting deliberate indifference toward the deprivation of federal rights. *Harris,* 489 U.S. at 390, 109 S.Ct. at 1205 *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

■ Plaintiff concedes that the District did not have an official policy of delaying its provision of tutoring services ordered by HROs, but she asserts that "there are indicators that there was a pattern of persistent and widespread practice within the ISD 283 of failing to comply with the IDEA." Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment at 23–24 (hereinafter "Pl.'s Mem. at _____"). Plaintiff provides no evidentiary support for her argument that the District engaged in an unofficial policy or custom of delaying tutoring services. In order to survive the District's summary judgment motion, Plaintiff must "establish the existence of an element essential to that party's case" by designating specific facts demonstrating that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Plaintiff has failed to allege a single fact in support of her argument that the District engaged in an unofficial custom of delaying tutoring ser-

vices, or even the custom of disregarding HRO decisions. Pointing to immaterial factual disputes is insufficient to avoid summary judgment. *Id.* at 323, 106 S.Ct. at 2552 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

■ Plaintiff devotes somewhat more attention to her argument that the District acted with deliberate indifference to Plaintiff's rights under the IDEA. Plaintiff argues that the District manifested its deliberate indifference to Plaintiff's rights either by failing to train its staff to write legally sufficient IEPs and provide tutoring consistent with a HRO decision or by failing to provide the tutoring. The District will be held liable under § 1983 for a delay in providing tutoring to Plaintiff only if Plaintiff can prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe A v. Special Sch. Dist.,* 901 F.2d 642, 646 (8th Cir.1990).

■ Plaintiff claims that because the District was "clearly aware" that it delayed in providing tutoring to Plaintiff, it was deliberately indifference to Plaintiff's right to the tutoring. Plaintiff, in an attempt to avoid summary judgment, points to factual disputes over what the District was doing in September and October to obtain tutoring and why the tutoring was delayed. The District highlights these factual disputes as well by asserting that it had difficulty finding a tutor qualified to teach Plaintiff, a claim that Plaintiff refutes. The factual disputes are not material to the Court's resolution of this issue because Plaintiff has presented not one scintilla of evidence that the District was

deliberately indifferent to Plaintiff's right to compensatory tutoring. The District has given reasonable explanations for its delay, and Plaintiff has not provided any evidence to the contrary beyond her blanket refutation of the District's explanation. Mere delay, without more, cannot rise to the level of a § 1983 violation. Plaintiff has cited no case law that concludes otherwise. While the District's delay in providing tutoring to Plaintiff was perhaps negligent and certainly regrettable, it does not constitute actionable deliberate indifference. *See Sanchez v. School Dist. 9–R,* 902 P.2d 450, 453 (Colo.Ct.App. 1995).

To succeed on a § 1983 claim alleging a failure to train municipal employees, Plaintiff must show both that the District's training of its employees was inadequate in relation to the tasks that the employees were required to perform and that the deficiency in the training program was closely related to the injury alleged. *City of Canton v. Harris,* 489 U.S. 378, 390–91, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989). Plaintiff's failure to train claim fails as well. Nowhere in her pleadings does Plaintiff allege that the District failed to properly train its employees to provide compensatory tutoring to students. As the District points out, compensatory tutoring is rarely required or ordered by a HRO, so the District would have no reason to train its employees in its provision. Plaintiff does argue that the District failed to properly train its employees to write legally constituted IEPs. Even if Plaintiff could prove that allegation, she would not prevail on her failure to train charge because training employees to write adequate IEPs is not sufficiently related to the task at issue: providing compensatory tutoring for Plaintiff. The deficiency in the training program must be closely related to the injury alleged for Plaintiff to recover. *Id.*

Plaintiff attempts to create a nexus between the alleged inadequate training and the delay in tutoring by claiming that tutoring services were delayed because the District was unable to promptly write a legally constituted IEP. The Court agrees with the District's assertion to the contrary. In the HRO's decision, the paragraph ordering compensatory tutoring was entirely separate from paragraphs directing the District to write a lawful IEP. The decision does not require the IEP team to provide the tutoring, and the retention of a qualified tutor has absolutely nothing to do with assessing Plaintiff's educational needs and developing a plan to meet those needs. Plaintiff provides no evidence whatsoever that the delay in tutoring would have been avoided if the District's employees had been adequately trained in writing adequate IEPs. *See Harris,* 489 U.S. at 391, 109 S.Ct. at 1206.

Plaintiff has failed to assert any evidence sufficient to allow a reasonable jury to find that the District could be held liable under § 1983 for delaying the provision of compensatory tutoring to Plaintiff. Even if Plaintiff could prove that the District acted under color of law either through an unofficial policy or custom or because of deliberate indifference to a deprivation of Plaintiff's federal rights, she has failed to assert facts showing that she was in fact denied her right to a free appropriate public education under the IDEA. Contrary to Plaintiff's claims, the District did not fail to implement the HRO's decision. It did provide Plaintiff with the tutoring ordered by the HRO. Plaintiff received almost all of the required 108 hours of tutoring; her parents refused to accept the remaining 8.5 hours. Plaintiff does not support her conclusory allegation that the delay in receiving tutoring deprived her of a free appropriate education. Blanket assertions that Plaintiff felt "frustrated" by the delay do not meet the high burden she must meet to satisfy the requirements of *Monell* and *Harris.* The Court therefore dismisses Count I of Plaintiff's Complaint.

**B. Count II: Violation of the Americans with Disabilities Act**

In Count II of her Complaint, Plaintiff claims that the District deliberately denied her a reasonable accommodation for her disability in violation of the Americans with Disabilities Act ("ADA") by not providing her with her own key to Cedar Manor's wheelchair elevator. Generally, the ADA does not

require plaintiffs to exhaust administrative remedies before bringing a claim under Title II of the Act. 28 C.F.R. § 35.172; *see also Hope v. Cortines,* 872 F.Supp. 14, 20 (E.D.N.Y.), *aff'd,* 69 F.3d 687 (2d Cir.1995). If, however, the relief sought under the ADA is relief that could have been sought under the IDEA, the plaintiff must exhaust the IDEA's administrative remedies before bringing a claim under the ADA. 20 U.S.C. § 1415(f); *Mrs. W v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987); *Hope,* 872 F.Supp. at 21.

 Not only is Plaintiff's ADA claim one that could have been brought under the IDEA, it was in fact at issue in Plaintiff's IDEA due process hearing. Both the Hearing Officer and the Hearing Review Officer found that the District had not violated Plaintiff's rights by denying her a personal elevator key. HO Dec. at 35; HRO Dec. at 56. Plaintiff did not appeal the HRO's decision in favor of the District on the elevator key issue as provided by 20 U.S.C. § 1415(e)(2), so that decision became final. 20 U.S.C. § 1415(e)(1).

Plaintiff can avoid the IDEA's exhaustion requirement only by articulating some distinction between the ADA claim and the IDEA claim regarding the elevator key. She has failed to do so. Simply seeking a different type of relief, money damages, that is not available under the IDEA will not enable Plaintiff to proceed on her ADA claim without first exhausting IDEA remedies. *See Waterman v. Marquette–Alger Intermediate Sch. Dist.,* 739 F.Supp. 361, 365 (W.D.Mich. 1990). Therefore, Plaintiff may not bring a claim under the ADA.

 Furthermore, even if Plaintiff had not presented this issue at her IDEA due process hearing, her claim fails under the ADA. To prevail on an ADA claim, Plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities; and (3) such treatment was by reason of Plaintiff's disability. *Tyler v. City of Manhattan,* 857 F.Supp. 800, 817 (D.Kan.1994).

 Both parties agree that Plaintiff is a qualified individual with a disability. Plain-

tiff argues that she was denied the benefits of Cedar Manor's facilities because she had difficulty using the stairs and was not given independent access to the elevator. The Court need not address this prong of the ADA test because even if Plaintiff were denied benefits for a short time, it is clear that the District's actions were not taken by reason of Plaintiff's disability. Plaintiff first requested a personal key either in her request for a due process hearing on February 4, 1994 or during the due process hearing itself. The District refused to give Plaintiff a key at that time because it wanted to verify that independent use of the elevator by students was safe both for those using the elevator and those around it. The District also wanted to develop criteria for the issuance of keys to students. This explanation constitutes a legitimate, nondiscriminatory reason for the District's actions. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Plaintiff must then produce specific facts to show that the District's stated reasons were "mere pretext" for discrimination. *Id.* at 804, 93 S.Ct. at 1825; *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 796 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Plaintiff has not alleged a single fact to refute the District's explanation for its delay in providing her with a key to the elevator.

 Plaintiff also has failed to show that the District had the appropriate state of mind to be in violation of the ADA. The Eighth Circuit has held that plaintiffs must allege and make a showing of either bad faith or gross misjudgment to prevail on a claim under § 504 of the Rehabilitation Act, and thus under the ADA, at least in the context of educating students with disabilities. *See Monahan v. State of Neb.,* 687 F.2d 1164, 1171 (8th Cir.1982), *cert. denied sub nom. Rose v. Nebraska,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983); *see also Fort Zumwalt Sch. Dist. v. Missouri State Bd. of Educ.,* 865 F.Supp. 604, 607 n. 3 (E.D.Mo. 1994). Plaintiff has provided no factual support for a contention that the District acted in bad faith or exercised gross misjudgment, only that the District wanted to make sure

the elevator was safe and to develop criteria for its use. Pl.'s Mem. at 26–27. Good faith attempts to pursue legitimate ends, such as safety, will not result in liability under the ADA. *See Wood v. President & Trustees of Spring Hill College,* 978 F.2d 1214, 1219 (11th Cir.1992).

Finally, Plaintiff attempts to muddy the waters of her ADA claim by asserting in her pleadings that the District became aware of her request for an elevator key in November 1993. Plaintiff cites to her own affidavit in support of this assertion. The affidavit does not provide any support for Plaintiff's point; it states only that "[d]uring my fifth grade year, I went to the office to ask [the principal] about a key.... This was before the due process hearing." Affidavit of Rebecca Hoekstra Regarding Use of Wheelchair Life/Elevator, at ¶ 10. Nowhere in Plaintiff's affidavit does she state that she asked for the key in November 1993, or in the fall or early winter of that year. While it is true that physical therapist Sherri Kjersten noted in November 1993 that Plaintiff had injured her foot and would supplement her use of the stairs with use of the elevator, there is no evidence that either Kjersten or Plaintiff requested *independent* access to the elevator for Plaintiff until February 1994 at the earliest. Plaintiff's assertion to the contrast is disingenuous, if not actually dishonest. For all of the above reasons, Plaintiff's claim under the ADA is dismissed.

## IV. CONCLUSION

Plaintiff has failed to produce any evidence sufficient to satisfy at least one essential element of either her § 1983 claim or her ADA claim. While Plaintiff does not need to prove her case at the summary judgment stage, she must at least provide enough evidence to allow a reasonable jury to decide in her favor at trial. Because she has failed to provide such evidence, both her § 1983 claim and her ADA claim must be dismissed.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. The Motion for Summary Judgment of Defendant Independent School District No. 283 (Clerk Doc. No. 12) is GRANTED; and

2. The Complaint is DISMISSED WITH PREJUDICE.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**