Eric J. MEURY, Herman G. Meury and Carol A. Meury, Appellants–Plaintiffs,

v.

EAGLE–UNION COMMUNITY SCHOOL CORPORATION, Russell E. Hodgkin, Jack Schroeder and Jean Keneipp, Appellees–Defendants.

No. 06A01–9803–CV–117.

Court of Appeals of Indiana.

June 30, 1999.

---

William V. Barteau, Speedway, Indiana, Jan B. Berg, Indianapolis, Indiana, Attorneys for Appellants.

James S. Stephenson, Michael R. Morow, Stephenson Daly Morow & Kurnik, Indianapolis, Indiana, Jack G. Hittle, Church Church Hittle & Antrim, Noblesville, Indiana, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge

Eric J. Meury and his parents, Herman G. Meury and Carol A. Meury (collectively the Meurys), appeal the trial court's dismissal of their action against Eagle–Union Community School Corporation, Russell E. Hodgkin, Jack Schroeder, and Jean Keneipp (collectively the Defendants). As restated, the Meurys present one issue on appeal:

> Was their amended complaint subject to Ind. Trial Rule 12(B)(6) dismissal for failure to state a claim?

We affirm.

The facts, as alleged in the Meurys' amended complaint and as gathered from the record as a whole, disclose that during the relevant time period, Russell Hodgkin was principal at Zionsville Community High School, Jack Schroeder was the director of the guidance department, and Jean Keneipp was the secretary at the guidance office. Eric was a student at the high school.

In October 1994, Eric's parents[1] wrote a letter to "Dr. Hodgkin [and] To all Staff of

---

1. The record of proceedings contains a photocopy of the letter which was attached to the original complaint. At the hearing on defendants' T.R. 12(B)(6) motion, counsel for the Meurys acknowledged that although the letter was not resubmitted with the amended complaint, "it is part of the case." *Record* at 118. The amended complaint reveals that dissemination of the letter forms the basis for the complaint. The photocopy of the letter appears to be signed by Carol A. Meury alone, but the handwriting and signature line at the bottom of the letter were slightly askew and were not completely copied.

EUSC (present & future)". *Record* at 18. The handwritten portion of the letter urges that disclosure of some information contained in Eric's school records would violate his privacy under federal statutes. The letter refers to removing Eric from one teacher's class due to philosophical differences, and a "resolution [as] to Eric's immature judgement ... (written information on Behavior Modification)", stemming from Eric giving a student a flyer regarding an event which contained "art work of the event's interpretation by another student". *Record* at 18. In the upper left corner of the letter appears a typewritten excerpt of unreferenced material regarding review of school records for inaccurate, damaging, or misleading information and the right to request the removal of such material or request a hearing.

Sometime later Eric contacted colleges and scholarship granting organizations which required copies of his school transcripts. The Meurys discovered that the letter was sent with transcript information when requests were made. According to the Meurys' complaint, Schroeder and Keneipp informed them that Hodgkin attached to the letter a note stating "put in Eric's file and sent (sic) it out with transcripts." *Record* at 14 and 57.

In April 1997, the Meurys filed their complaint requesting damages, punitive damages, and an injunction. In an apparent effort to establish a malicious intent for including the letter with Eric's transcripts, the complaint provides background information on Carol and Herman's strained relationship with

Hodgkin and the school system. The letter is attached to the original complaint and forms the basis for the Meurys' assertion that their privacy rights were violated under common law, statutory provisions, and constitutional provisions. They specifically complain that their rights were violated under the Family Educational Rights and Privacy Act (FERPA)[2] and its amendments.

After requesting extensions to file an answer, the Defendants filed a motion to dismiss, pursuant to T.R. 12(B)(6), for failure to state a claim. The Defendants have not filed an answer. The Defendants's motion to dismiss particularly noted that FERPA does not provide for a private cause of action, but instead is enforceable by the United States Secretary of Education by means of funding sanctions. In response to the Defendants's motion to dismiss, the Meurys filed their "First Amended Complaint" on October 14, 1997. *Record* at 53.

The amended complaint in six counts contains an introductory statement with an historical background, a factual background, and a section designated "Malicious distribution of harmful document by Defendants". *Record* at 56. As in the original complaint, the amended complaint is based upon dissemination of the letter.[3] The allegations are substantially the same as in the original complaint, except the amended complaint invokes 42 U.S.C. § 1983 as a means to enforce FERPA. The amended complaint requests damages, punitive damages, and an injunction in order to redress: the lost opportuni-

Thus, Herman's signature may appear on the original.

**2.** The provision is entitled "Family educational and privacy rights", 20 U.S.C.A. § 1232g, but is commonly referred to as noted. *See Norris v. Board of Education*, 797 F.Supp. 1452 (S.D.Ind. 1992); *see also* John E. Theuman, Annotation *Validity, Construction, and Application of Family Educational Rights and Privacy Act of 1974*, 112 A.L.R. Fed. 1 (1993) (FERPA is also referred to as the Buckley Amendment or the Buckley/Pell Amendment to the General Education Provision Act).

**3.** The letter appears to be based upon a section of FERPA which states:

No funds shall be made available under any applicable program to any educational agency or institution unless the parents of students who are or have been in attendance at a school of such agency or at such institution are provided an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order to insure that the records are not inaccurate, misleading, or otherwise in violation of the privacy rights of students, and to provide an opportunity for the correction or deletion of any such inaccurate, misleading or otherwise inappropriate data contained therein and to insert into such records a written explanation of the parents respecting the content of such records.

20 U.S.C.A. § 1232g(a)(2) (1998 Supp.).

ties, the intentional infliction of emotional distress, the violations of state and federal privacy rights, and the violation of the "educational policy" of Indiana. The complaint includes a request for a permanent injunction on behalf of all students and parents of Eagle–Union to prevent future conduct similar to that which forms the basis for the complaint. Because the amended complaint is crucial to this appeal, it is prudent to reproduce substantive portions here:

### COUNT I
* * *

22. The conduct of Hodgkin, Schroeder and Keneipp, acting in their individual capacity and as agents and employees of [Eagle–Union], was in violation of Plaintiff's (sic) rights under the Family Education Rights and Privacy Act of 1974, as amended. (20 U.S.C. Sec. 1232g) as well as the common law and constitutional privacy right of the Plaintiffs under the laws and Constitution of the United States.

23. Said conduct was calculated to and did harm Eric, Carol and Herman, by interfering with Eric's opportunity to attend college; by harming his opportunity to obtain scholarship aid from colleges and universities and private organizations that grant scholarship aid; and by injuring his reputation in the academic communities to which he aspired.

24. Plaintiffs believe that the inclusion of the October 14, 1994 letter with Eric's transcript cost him a swimming scholarship at the University of Indianapolis; and caused him to lose scholarships offered by various private organizations, all to their damage in the amount of $28,200.00.

25. As a result of Defendants' actions, Plaintiff (sic) Eric, Herman and Carol each suffered mental anguish and suffering, as well as monetary loss, for which they are entitled to damages from Defendants in [an] amount sufficient to compensate them for their losses.

26. The conduct of Defendants was conducted under color of State law.

27. This action is brought under the provisions of 42 U.S.C. Sec.1983 *et seq.*

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in [an] amount sufficient to compensate them for their losses, for their attorneys fees, costs, and all other relief proper in the premises.

* * *

### COUNT II
* * *

29. The acts and actions of Defendant Hodgkin were taken purposely, intentionally and maliciously so as to injure Eric, well knowing that such injury to Eric would cause extreme mental anguish to his parents, Carol and Herman, all in retaliation against Carol and Herman for their activities in the Zionsville Community High School community.

30. Hodgkin well knew that including material such as the October 14, 1994 letter with the transcript was in violation of statutory and common law and in violation of the privacy rights of Eric, Carol and Herman.

**WHEREFORE,** Plaintiff (sic) pray for punitive damages against Hodgkin in such amount as will punish him for his conduct and will deter him from taking such action against other students in the future; for their attorneys fees and costs, and for all other relief proper in the premises.

* * *

### COUNT III
* * *

32. The conduct of [Eagle–Union] constituted a violation of Plaintiffs' rights under the Family Educational Rights and Privacy Act of 1974, as amended, and violated the privacy rights of the Plaintiffs under the Constitution of the United States.

33. Unless restrained, [Eagle–Union] will continue to violate the rights of students by including extraneous, harmful information in the copies of transcripts sent to colleges, universities and other institutions.

**WHEREFORE,** Plaintiffs pray for a permanent injunction against [Eagle–Union] enjoining said corporation from so vio-

lating the rights of their students and the parents of said students, for their costs and attorneys' fees, and for all other relief proper in the premises.

\* \* \*

## COUNT IV

\* \* \*

35. The conduct of Defendants, and each of them, was in violation of Plaintiffs' rights under the common law, statutes and Constitution of the State of Indiana, and of the educational policy of the State of Indiana, including the right of confidentiality and privacy.

**WHEREFORE,** Plaintiffs pray for damages against Defendants and each of them in [an] amount sufficient to compensate them for their losses, for their attorneys fees, costs and all other relief proper in the premises.

\* \* \*

*Record* at 57–61. Count V against Hodgkin incorporates allegations contained in Counts I and II and reiterates the prayer for punitive damages. Count VI against Eagle–Union incorporates allegations contained in Count I, alleges violations of common law, statutes and Indiana's Constitution, and reiterates Plaintiffs' requests for an injunction, costs, and attorney fees.

The Defendants filed a motion to dismiss the first amended complaint. After motions in response and a hearing, the trial court granted the Defendants's motion stating "the First Amended Complaint is dismissed for failure to state a cause of action under Indiana Trial Rule 12." *Record* at 112.

When reviewing the dismissal of a complaint for failure to state a claim under T.R. 12(B)(6), this court views the pleadings in a light most favorable to the plaintiffs and draws every reasonable inference in favor of the plaintiffs. *Ratliff v. Cohn,* 693 N.E.2d 530 (Ind.1998). This court will not assess the sufficiency of facts supporting the complaint, but determines if the complaint states any set of allegations upon which the trial court could grant relief. *McDonald v. Smart Professional Photo,* 664 N.E.2d 761 (Ind.Ct.App.

1996). "To state a claim for relief, a complaint need only contain (1) a short and plain statement of the claim and (2) a demand for relief. *See* Ind. Trial Rule 8(A)." *Id.* at 764. The rules of procedure, based on notice pleading, do not require a complaint to state all elements of a cause of action. Therefore, a T.R. 12(B)(6) motion should be granted only where it is clear on the face of the complaint that under no circumstances could relief be granted. *Id.*

A successful T.R. 12(B)(6) motion will be affirmed on appeal when a complaint states a set of facts and circumstances, which, even if true, would not support the relief requested. *Minks v. Pina, City of Hammond et al.,* 709 N.E.2d 379 (Ind.Ct.App.1999); *Right Reason Publications v. Silva,* 691 N.E.2d 1347 (Ind.Ct.App.1998). We will affirm the trial court's dismissal of an action if the judgment is sustainable on any theory or basis found in the record. *Id.*

The Meurys assert that Defendants merely question the factual bases for the complaint which is impermissible when testing the sufficiency of a complaint to withstand a T.R. 12(B)(6) motion to dismiss. The Defendants answer that the totality of facts, circumstances, and allegations asserted by the Meurys do not, under any circumstances, state claims upon which relief could be granted. We will address the federal and state claims separately.

Three reasons dictate a finding that the Meurys have failed to present viable federal claims. First, FERPA explicitly provides for a funding remedy with enforcement vested exclusively in the Secretary of Education. Second, FERPA is aimed at educational agencies or institutions with a "policy or practice" of 1) denying inspection to parents or students, or 2) releasing educational records without the parents' or student's consent to those other than those specifically excepted. Third, the letter did not disclose the substance of any private information, thus, dissemination of the letter to postsecondary educational and scholarship-granting institutions, based upon the Meurys' request that Eric's educational records be sent to the facilities, does not bring the Meu-

rys' claim within the purview of FERPA and did not violate federal right to privacy tenets.

■ The Meurys acknowledge that FERPA does not contemplate or support a private cause of action. Instead, they direct this court to cases which have held that FERPA violations may give rise to a private cause of action when the remedies under 42 U.S.C. § 1983 of the civil rights act are importuned. *See, e.g., Doe v. Knox County Board of Educ.*, 918 F.Supp. 181 (E.D.Ky.1996) (§ 1983 will support FERPA claims in an action wherein the educational records and medical condition of a student were disclosed to a newspaper and printed in an article); *Maynard v. Greater Hoyt School Dist.*, 876 F.Supp. 1104 (D.S.D.1995) (while § 1983 will support FERPA claims, the school board was not liable because it did not act under its own policy or custom for disclosing information to a newspaper reporter); *Belanger v. Nashua, N.H. School Dist.*, 856 F.Supp. 40 (D.N.H. 1994) (parent had a valid FERPA claim pursuant to § 1983 for school district's failure to provide her with juvenile court records made a part of her son's educational records).

The enforcement provisions within FERPA explicitly provide that the Secretary of Education is solely responsible for enforcement, thereby preempting a private cause of action. The Secretary of Education may withhold funds to schools with a "policy or practice" violative of the provisions of the statute. Under the subsection of the act entitled "Enforcement; termination of assistance," the provision states:

> The Secretary shall take appropriate actions to enforce this section and to deal with violation of this section, in accordance with this chapter, except that action to terminate assistance may be taken only if the Secretary finds there has been a failure to comply with this section, and he has determined that compliance cannot be secured by voluntary means.

*Id.* Even the Secretary is not empowered to enforce the funding termination provisions unless two components are met: 1) there is a failure to comply with the statute, *and* 2) compliance cannot be voluntarily obtained.

The Defendants direct us to a federal case which we find instructive. In *Norris v. Board of Education*, 797 F.Supp. 1452 (S.D.Ind.1992), the court found that a § 1983 claim would not support a private cause of action under FERPA. The court recognized that procedurally the plaintiffs had properly raised a § 1983 claim but that substantively FERPA is insufficient to support a § 1983 action for damages. *Id.* The court said:

> The FERPA provides expressly that the Secretary of Education is responsible for enforcing the provisions and protections of FERPA; Section 1983 does not create a private right of action for damages where the federal statute provides an exclusive administrative enforcement mechanism.

*Id.* at 1465. As noted, FERPA explicitly provides for funding remedies to be enforced by the Secretary of Education in a prescribed manner. The Meurys have failed to state a private cause of action by invoking § 1983 to remedy an alleged FERPA violation.

Further, denial of funding for FERPA violations is explicitly aimed at educational agencies or institutions with a "policy or practice" of denying parents or students access to educational records under the provisions of 20 U.S.C. § 1232g(a) or releasing educational records without consent pursuant to the provisions of 20 U.S.C. § 1232g(b). The lengthy factual background provided in the Meurys' complaint and their reliance upon the single letter do not reveal a "policy or practice" set or enforced by the Defendants. *See Maynard v. Greater Hoyt School Dist.*, 876 F.Supp. 1104 (school board was not liable for alleged FERPA violation because it did not act under its own policy or custom for disclosing information given to a newspaper reporter).

■ Moreover, the dissemination of the letter along with the educational records that the Meurys requested to be sent to the various postsecondary and scholarship-granting institutions, only one of which they specifically name, does not establish a violation of FERPA, or of federal right to privacy tenets. On its face, the letter appears to be nothing more than an explanation of the actions taken by the Meurys regarding Eric's education and behavior, as opposed to a reference to

actions taken by the school. The thrust of the letter appears to partially satisfy FERPA's requirement that the parents be provided "an opportunity for the correction or deletion of any ... inaccurate, misleading or otherwise inappropriate data contained therein and to insert into such records a written explanation of the parents respecting the content of such records." 20 U.S.C.A. § 1232g(a)(2). The letter comports with FERPA's requirement that the parents be allowed to include explanatory material in a student's education records. *See* John E. Theuman, Annotation *Validity, Construction, and Application of Family Educational Rights and Privacy Act of 1974*, 112 A.L.R. Fed. 1, 1993 WL 837778 (1993) (suggesting that parents or students who have not been allowed to explain or amend inaccurate or misleading records may then request a hearing to challenge the content of the records).

While it is true that the letter could leave a reader with the impression that disciplinary action was taken, the statute specifically allows inclusion of disciplinary records in the education records[4] of a student, and allows that information to be disseminated in some circumstances. FERPA provides:

**Disciplinary records; disclosure**

Nothing in this section shall prohibit an educational agency or institution from—

(1) including appropriate information in the education record of any student concerning disciplinary action taken against such student for conduct that posed a significant risk to the safety or well-being of that student, other students, or other members of the school community; or

(2) disclosing such information to teachers and school officials, including teachers and school officials in other schools, who have legitimate educational interests in the behavior of the student.

20 U.S.C.A. § 1232g(h). Inclusion of the letter with records sent to postsecondary educational institutions and scholarship-granting bodies, at the request of the Meurys, does not appears to violate FERPA even if, as the Meurys urge, the letter is characterized as a reference to disciplinary matters. The Meurys do not allege that any other educational records with disciplinary matters exist or were disseminated by the Defendants if such records do exist.

As noted by the Defendants, the letter merely asserts rights and does not contain the substance of any controversy which may have existed. Disclosure of the Meurys' letter, alone, does not establish a violation of FERPA.[5]

■ To the extent that the Meurys' complaint can be read to assert a federal constitutional claim of the right to privacy as a separate basis for recovery apart from FERPA, that claim too must fail in the context of disclosure of the Meurys' letter. The Meurys direct this court to *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and *Norris v. Board of Education,* 797 F.Supp. 1452, for the proposition that "[a]n individual has a constitutionally protected in-

---

4. "Education records" is defined as "those records, files, documents, and other materials which—(I) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C.A. § 1232g(a)(4)(A). The statute also sets out records the term specifically does not include. 20 U.S.C.A. § 1232g(a)(4)(B).

5. The Defendants set out additional reasons to support entry of the dismissal including: the failure to properly allege official capacity liability and qualified immunity for Hodgkin, Schroeder, and Keneipp. Our resolution does not require us to address additional reasons. Finally, although again not necessary to our review, another reason may exist for denying any claim by Carol and Herman. FERPA provides:

**Student's rather than parents' permission or consent**

For the purposes of this section, whenever a student has attained eighteen years of age, or is attending an institution of postsecondary education, the permission or consent required of and the rights accorded to the parents of the student shall thereafter only be required of and accorded to the student.

20 U.S.C.A. § 1232g(d). The records were sent at the Meurys' request for Eric's postsecondary education. The record does not reveal Eric's date of birth or whether he had reached the age of eighteen when the requests were made. Thus, it is possible that FERPA provisions are not applicable to Carol and Herman in any manner.

terest in avoiding disclosure of some personal matters, ... and that interest might extend to a student's interest in his records." Appellant's Brief at 15.

In *Whalen,* the plaintiffs asserted that a state statute which required a computerized data base with the names and addresses of patients who were prescribed legal but controlled substances invaded a constitutionally protected "zone of privacy." *Whalen,* 429 U.S. at 598, 97 S.Ct. 869. The Court recognized the evolving, but amorphous, right of privacy as a penumbral right "founded in the Fourteenth Amendment's concept of personal liberty." *Id.* at 598 n. 23, 97 S.Ct. 869; *see, e.g., Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The Court did not find that a generalized right to privacy exists, and determined that the possibility that private information would be improperly disclosed was outweighed by the legitimate state interest in regulating controlled substances. The Court noted the decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which found that any federally protected right to privacy does not encompass the dissemination of embarrassing facts about a person, whether intentional or negligent.

Here, we do not examine a governmental entity's right to gather information or disseminate that information. The Meurys specifically requested that Eric's records be sent to other educational and scholarship-granting institutions. The lengthy factual background provided in the complaint could persuade a reader to attribute a rancorous purpose for disseminating the letter, even though, as we noted above, inclusion of the letter in the educational records can be viewed as explanatory information. Yet, the fact remains that the letter itself, whether distributed malevolently, benevolently, or negligently, does not contain substantive private information and cannot form the basis for an action alleging a federal right to privacy violation. The Meurys have failed to present any viable federal claims.

**6.** Ind.Code Ann. § 34–13–3–8 (West Supp.1998).

■ Turning to the state claims, the Meurys' complaint is insufficient to survive a T.R. 12(B)(6) dismissal. First, the Meurys' undefined state common law and statutory tort claims are barred. Claims against school corporations and their employees are subject to the Indiana Tort Claims Act (ITCA) notice of claims provisions.[6] *Van-Valkenburg v. Warner,* 602 N.E.2d 1046 (Ind. Ct.App.1992) (citing portion of ITCA in effect at the time which includes school corporations as political subdivisions requiring compliance with the notice provisions of ITCA); *Bienz v. Bloom,* 674 N.E.2d 998 (Ind.Ct.App. 1996) (notice required to a political subdivision and an employee of a political subdivision sued in her individual capacity in an action for defamation, intentional infliction of emotional distress, and retaliatory discharge), *trans. denied,* 683 N.E.2d 595; *Lake County Juvenile Court v. Swanson,* 671 N.E.2d 429 (Ind.Ct.App.1996) (failure to file tort claims notice operates to bar claims against employees of governmental entity), *trans. denied,* 683 N.E.2d 588. A tort lawsuit against a political subdivision is barred absent the timely filing of a tort claim notice. *See Kellogg v. City of Gary,* 562 N.E.2d 685 (Ind.1990); *see also McConnell v. Porter Memorial Hosp.,* 698 N.E.2d 865 (Ind.Ct.App. 1998) (statute requiring a notice of claim to a governing body is liberally applied to plaintiffs), *trans. denied,* 706 N.E.2d 182. "The question of compliance is not a question of fact, but rather a procedural precedent which the plaintiff must prove and which the trial court must determine prior to trial." *Madden v. Erie Ins. Group,* 634 N.E.2d 791, 793 (Ind.Ct.App.1994).

■ The record does not reveal a tort claim notice. The fact that the Defendants here did not raise the Meurys' failure to comply with the notice provision may be attributable to the fact that the dismissal occurred before the Defendants filed their answer and included affirmative defenses. *Cf. Board of Comm'rs v. Briggs,* 167 Ind.App. 96, 340 N.E.2d 373 (1976) (failure to file a notice of claim should be raised with affirmative defenses).

ITCA notice provisions are inapplicable to § 1983 claims, even when presented in a state court forum. *See Kellogg v. City of Gary*, 562 N.E.2d 685; *Werblo v. Board of Trustees of Hamilton Heights School Corp.*, 537 N.E.2d 499 (Ind.1989) (tort claims notice not applicable to a teacher's civil rights claim against school district which arose from her discharge); *George v. Hatcher*, 527 N.E.2d 199 (Ind.Ct.App.1988) (the supremacy clause preempts ITCA tort claim rules in a § 1983 action). Nevertheless, even when inapplicable to federal claims, ITCA will apply to pendent state court claims made at the same time. *See Estate of Conner v. Ambrose*, 990 F.Supp. 606 (N.D.Ind.1997). Accordingly, the Meurys have no claim that their tort claims based upon state law are salvaged by allegations of federal civil rights violations.

The remaining claims are those under the Indiana Constitution and the constitutional claims for injunctive relief. The Meurys claim a state constitutional right to privacy.[7] They specifically complain that the Defendants's actions violated a recognized branch of invasion of privacy, *i.e.*, public disclosure of private facts.

Any additional analysis assumes that a constitutional tort would not be barred for failure to comply with ITCA notice requirements. We find, however, that the Meurys have failed to present a cognizable state invasion of privacy claim for two reasons. The letter alone is not actionable, and the nature of the disclosure does not satisfy the publicity component for disclosure of private information.

We held, in the section regarding federal claims, that the letter does not contain substantive private information upon which a violation of the right to privacy could be based. The Meurys specified in their complaint, at the dismissal hearing, and in their brief on appeal that their cause of action is based entirely upon dissemination of the letter. As with the Meurys' federal right to privacy claim, the Meurys have failed to demonstrate the necessary predicate to a violation.

Additionally, a plurality of the Indiana Supreme Court has characterized invasion of privacy, including public disclosure of private facts, as a sub-tort or "mini" version of other torts such as outrage, trespass, or defamation. *See Doe v. Methodist Hosp.*, 690 N.E.2d 681 (Ind.1997). In *Doe*, the plurality opinion details the origin and applicability of such claims. The plurality opinion sounds a note of caution when proceeding in the area of truthful disclosures, inasmuch as such an action sidesteps the most significant defense in the torts of libel or slander, *i.e.*, the truth of the disclosed information allows a presumption that no actionable harm could flow. *Id.* The court concluded that the plaintiff in *Doe* had no cause of action for public disclosure of private facts where the "publicity" was to additional co-workers after the plaintiff disclosed the private information to others. *Id.*

Here, any such claim also would fail due to the nature of the disclosure. The Meurys base their claim on a truthful disclosure which was made only to parties to whom they requested that private educational information be disclosed. The complaint fails to satisfy the requirements for a state constitutional tort for invasion of privacy.

Finally, our analysis forecloses any claim that Eagle–Union should be enjoined from allowing such information to be disclosed. The circumstances of the present case do not reveal a wrongful disclosure. Thus, no disclosure occurred which Eagle–Union could be enjoined from continuing.

Judgment affirmed.

KIRSCH, J., and MATTINGLY, J., concur.

---

**7.** The Meurys do not specify or allude to state constitutional claims outside of the realm of privacy. We note that the Indiana Constitution, Art. 8, addresses education. In this context, we do not perceive of any constitutional education claim premised upon the general education provisions within Art. 8. Further, not every constitutional provision contemplates a private cause of action. *See Boehm v. Town of St. John*, 675 N.E.2d 318 (Ind.1996) (some rights located within the Indiana Constitution may not contemplate an individual remedy).